In The

# United States Court of Appeals

### For The Fourth Circuit

## KESHA T. WILLIAMS,

*Plaintiff – Appellant,*

**v.**

## STACEY A. KINCAID, in her official capacity; XIN WANG, NP, in her individual and official capacities; DEPUTY GARCIA, in his individual and official capacities,

*Defendants – Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA**

———————

**BRIEF OF APPELLEES**

———————

Alexander Francuzenko
Philip C. Krone
COOK CRAIG & FRANCUZENKO, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, Virginia 22030
(703) 865-7480

*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 21-2030          Caption: Kesha Williams v. Deputy Garcia

Pursuant to FRAP 26.1 and Local Rule 26.1,

Deputy Garcia
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.   Does party/amicus have any parent corporations?   ☐YES ☑NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐YES ☑NO
     If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Philip Corliss Krone                    Date:         10/4/2021

Counsel for: Appellee, Deputy Garcia

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 21-2030        Caption: Kesha Williams v. Stacey Kincaid

Pursuant to FRAP 26.1 and Local Rule 26.1,

Stacey Kincaid
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.   Does party/amicus have any parent corporations?   ☐YES ☑NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐YES ☑NO
     If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Philip Corliss Krone                    Date:        10/4/2021

Counsel for: Appellee, Stacey Kincaid

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _21-2030_     Caption: _Kesha Williams v. Xin Wang_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Xin Wang_
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2. Does party/amicus have any parent corporations? ☐YES ☑NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
   If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: _____    Date: ____10/4/2021____

Counsel for: Appellee, Xin Wang
_____

- 2 -

[Print to PDF for Filing]

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ..................................................... 1

STATEMENT OF THE ISSUES ........................................................... 2

STATEMENT OF THE CASE ............................................................. 3

SUMMARY OF THE ARGUMENT ..................................................... 6

ARGUMENT ....................................................................................... 12

    I.     Standard of Review ........................................................... 12

    II.    Judicial Notice Regarding Ms. Williams' ADA/Rehabilitation Act Claims ........................................................................... 13

    III.   Ms. Williams' Failed to State a Failure to Accommodate Claim under the ADA/Rehabilitation Act because an Individual with Gender Dysphoria Not Resulting from Physical Impairment is Not Disabled Under the Acts ............................................... 14

    IV.   42 U.S.C. § 12211(b)(1) Is Facially Valid .......................... 23

    V.    Ms. Williams' Claims Against Deputy Garcia and Nurse Wang Based on Alleged Conduct that Occurred Prior to February 12, 2019, are Barred by the Statute of Limitations .................... 25

    VI.   Ms. Williams' Failed to State a Gross Negligence Claim against Sheriff Kincaid, Deputy Garcia, and Nurse Wang.............. 30

         A.    Ms. Williams' Failed to State a Common Law Gross Negligence Claim against Sheriff Kincaid Because She Enacted Standards and Procedures Related to Inmate Safety.......................................................................... 32

B.   Ms. Williams Failed to State a Common Law Gross Negligence Claim against Deputy Garcia Because He Was Following the Jail's Policies ......................................................34

C.   Ms. Williams Failed to State a Common Law Gross Negligence Claim against Nurse Wang Because the Allegations Were Not Sufficient to State a Claim Under the Virginia Medical Practice Act..............................................37

VII.  Ms. Williams Failed to State a Fourteenth Amendment Equal Protection Claim against Deputy Garcia..............................................40

VIII. Ms. Williams Failed to State an Eighth Amendment Deliberate Indifference Claim against Nurse Wang ..............................................46

A.   Initial Hormone Therapy...........................................................47

B.   Missed Hormone Therapy Treatments ....................................51

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashann-Ra v. Commonwealth*,
    112 F. Supp. 2d 559 (W.D. Va. 2000)...........................................................45

*Blatt v. Cabela's Retail*, *Inc.*,
    No. 5:14-CV-04822,
    2017 WL 2178123 (E.D. Pa. May 18, 2017).....................................20, 21, 23

*Blue Ridge Serv. Corp.of Virginia v. Saxon Shoes*, *Inc.*,
    271 Va. 206, 624 S.E.2d 55 (2006) ...................................................33, 35, 36

*Borkowski v. Baltimore Cty.*, *Maryland*,
    492 F. Supp. 3d 454 (D. Md. 2020)...............................................................41

*Bridges v. Keller*,
    519 F. App'x 786 (4th Cir. 2013)..................................................................47

*Ceara v. Deacon*,
    916 F.3d 208 (2d Cir. 2019) .........................................................................27

*City of Cleburne*, *Tex. v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985)......................................................................................41

*Clark v. Colbert*,
    895 F.3d 1258 (10th Cir. 2018) ....................................................................38

*Conley v. Bishop*,
    32 Va. Cir. 236 (Fairfax 1993) .....................................................................29

*Cooper v. Dyke*,
    814 F.2d 941 (4th Cir. 1987) ...................................................................48, 50

*DeBlasio v. Johnson*,
    128 F. Supp. 2d 315 (E.D. Va. 2000) (same), *aff'd*,
    13 F. App'x 96 (4th Cir. 2001)......................................................................45

*De'Lonta v. Angelone*,
    330 F.3d 630 (4th Cir. 2003) ...................................................31, 46

*Doe v. Massachusetts Dep't of Corr.*,
    No. CV 17-12255-RGS,
    2018 WL 2994403 (D. Mass. June 14, 2018).........................22, 33

*Ebersole v. Conover*,
    2010 WL 3629581 (W.D. Va. Aug. 27, 2010),
    *report and recommendation adopted*,
    2010 WL 3585833 (W.D. Va. 2010).......................................49, 52

*Elliott v. Carter*,
    292 Va. 618, 791 S.E.2d 730 (2016) .................................30, 33, 35

*Estes v. Virginia Dep't of Corr.*,
    No. 7:18-CV-602,
    2020 WL 1472219 (W.D. Va. Mar. 26, 2020) ............................45

*Farmer v. Brennan*,
    511 U.S. 825 (1994).......................................................................48

*F.C.C. v. Beach Commc'ns, Inc.*,
    508 U.S. 307 (1993).......................................................................24

*Frazier v. City of Norfolk*,
    234 Va. 388, 362 S.E.2d 688 (1987) ...........................................35

*Frazier v. Red Robin Int'l, Inc.*,
    99 Va. Cir. 214 (Fairfax 2018) .....................................................29

*Gedrich v. Fairfax Cty. Dep't of Family Servs.*,
    282 F. Supp. 2d 439 (E.D. Va. 2003) ..........................................37

*Gilstrap v. Huntington Ingalls Inc.*,
    No. 4:19CV68, 2019 WL 8890001 (E.D. Va. Dec. 9, 2019) .................31, 32

*Goodman v. Praxair, Inc.*,
    494 F.3d 458 (4th Cir. 2007) ........................................................25

*Graham v. City of Manassas Sch. Bd.*,
    390 F. Supp. 3d 702 (E.D. Va. 2019) ............................................................28

*Grayson v. Peed*,
    195 F.3d 692 (4th Cir. 1999) ........................................................................47

*Heglund v. Aitkin Cnty.*,
    871 F.3d 572 (8th Cir. 2017) ........................................................................27

*Herrera v. Cleveland*,
    8 F.4th 493 (7th Cir. 2021) .....................................................................26, 27

*Iglesias v. True*,
    403 F. Supp. 3d 680 (S.D. Ill. 2019) ............................................................23

*Jackson v. Lightsey*,
    775 F.3d 170 (4th Cir. 2014) ........................................................................31

*Jehovah v. Clarke*,
    798 F.3d 169 (4th Cir. 2015) ........................................................................31

*Johnson v. Dep't of Alcoholic Beverage Control*,
    No. 3:15-CV-00055,
    2016 WL 7235836 (W.D. Va. Dec. 13, 2016) ..............................................36

*Kane v. Hargis*,
    987 F.2d 1005 (4th Cir. 1993) ..................................................................48, 49

*Kramer v. Banc of Am. Sec., LLC*,
    355 F.3d 961 (7th Cir. 2004) ........................................................................21

*Krupski v. Costa Crociere S. p. A.*,
    560 U.S. 538 (2010)..................................................................25, 26, 27, 28

*Kuykendall v. Young Life*,
    261 Fed. Appx. 480 (4th Cir. 2008) .........................................................30, 33

*Lange v. Houston Cty., Georgia*, No.
5:19-CV-392, 2020 WL 6372702 (M.D. Ga. Oct. 30, 2020),
*reconsideration denied*, No. 5:19-CV-392,
2020 WL 7634054 (M.D. Ga. Dec. 22, 2020)................................16

*McCleary-Evans v. Md. Dep't of Transp.*, *State Highway Admin.*,
780 F.3d 582 (4th Cir. 2015) .................................................13, 22

*Miltier v. Beorn*,
896 F.2d 848 (4th Cir. 1990) .........................................................31

*Morrison v. Garraghty*,
239 F.3d 648 (4th Cir. 2001) ...................................................41, 43

*National Wildlife Fed'n v. Hanson*,
859 F.2d 313 (4th Cir. 1988) .........................................................48

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) .........................................................12

*Nordlinger v. Hahn*,
505 U.S. 1 (1992).............................................................................41

*Northrop Grumman Sys. Corp.*,
418 F. Supp. 3d 921 (N.D. Ala. 2019) ..........................................14

*Parker v. Strawser Constr.*, *Inc.*,
307 F. Supp. 3d 744 (S.D. Ohio 2018)....................................15, 16

*Parker v. United States*,
475 F. Supp. 2d 594 (E.D. Va.), *aff'd*,
251 F. App'x 818 (4th Cir. 2007)...................................................39

*Permanent Mission of India to the United Nations v. City of New York*,
551 U.S. 193 (2007)................................................................. 20-21

*Phillips v. Calhoun*,
956 F.2d 949 (10th Cir. 1992) .......................................................38

*Sharpe v. S.C. Dep't of Corr.*,
    621 F. App'x 732 (4th Cir. 2015) .................................................50

*Shaw v. Murphy*,
    532 U.S. 223 (2001) ..............................................................43, 46

*Shaw v. Stroud*,
    13 F.2d 791 (4th Cir. 1994) ..................................................51, 52

*Shorter v. Barr*,
    2020 WL 1942785 (N.D. Fla. Mar. 13, 2020),
    *report and recommendation adopted*, 2020 WL 1942300
    (N.D. Fla. Apr. 22, 2020) ...........................................................22

*Sosebee v. Murphy*,
    797 F.2d 179 (4th Cir. 1986) ................................................48, 50

*Tay v. Dennison*,
    No. 19-CV-00501-NJR,
    2020 WL 2100761 (S.D. Ill. May 1, 2020) ........................... 22-23

*Turner v. Safley*,
    482 U.S. 78 (1987) .....................................................................44

*United States v. Bostic*,
    168 F.3d 718 (4th Cir. 1999) .....................................................23

*United States v. Snyder*,
    611 F. App'x 770 (4th Cir. 2015) ...............................................23

*United States v. Strieper*,
    666 F.3d 288 (4th Cir. 2012) ...............................................23, 24

*Veney v. Wyche*,
    293 F.3d 726 (4th Cir. 2002) .....................................36, 43, 45, 46

*Venson v. Gregson*,
    No. 3:18-CV-2185-MAB,
    2021 WL 673371 (S.D. Ill. Feb. 22, 2021) .................................23

*Walker v. Hershey*,
    979 F.2d 849,
    1992 WL 337096 (4th Cir. 1992) ........................................................48, 50

*Ware v. James City Cty.*,
    652 F. Supp. 2d 693 (E.D. Va. 2009) .........................................36

*Washington v. McAuliffe*,
    No. 7:16-CV-00476,
    2019 WL 1371859 (W.D. Va. Mar. 26, 2019) .............................45

*Webb v. Hamidullah*,
    281 F. App'x 159 (4th Cir. 2008).........................................48, 49

*Whitehead v. R.J. Reynolds Tobacco Co.*,
    173 F.3d 427 (4th Cir. 1999) ......................................................48

*Wilby v. Gostel*,
    578 S.E.2d 796 (Va. 2003) ..........................................................32

*Winzer v. Kaufman Cnty.*,
    916 F.3d 464 (5th Cir. 2019) ......................................................27

*Wolf v. Fauquier Cty. Bd. of Sup'rs*,
    No. 1:06CV945 JCC,
    2007 WL 2688418 (E.D. Va. Sept. 12, 2007*), aff'd sub nom.*
    *Wolf v. Fauquier Cty. Bd. of Sup'rs*, 555 F.3d 311 (4th Cir. 2009).............39

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. VIII ....................................................................*passim*

U.S. CONST. amend. XIV .............................................................................40

## STATUTES

27 U.S.C. § 1367 ...........................................................................................1

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 1331 ...................................................................................1

29 U.S.C. §§ 701 *et seq* ........................................................................1

29 U.S.C. § 705(20)(F) ....................................................................14, 24

42 U.S.C. § 1981a ...............................................................................21

42 U.S.C. § 1981a(2) ...........................................................................21

42 U.S.C. § 1983 ........................................................................*passim*

42 U.S.C. §§ 12101 *et seq* .....................................................................1

42 U.S.C. § 12102(1)(A) .......................................................................21

42 U.S.C. § 12131(2) ...........................................................................14

42 U.S.C. § 12132 ...............................................................................14

42 U.S.C. § 12211 ...............................................................................20

42 U.S.C. § 12211(a) ...........................................................................20

42 U.S.C. § 12211(b) ...........................................................................20

42 U.S.C. § 12211(b)(1) ..........................................................14, 21, 23, 24

42 U.S.C. § 12112 ...............................................................................21

Va. Code § 8.01-243 .......................................................................34, 38

## **RULES**

Fed. R. Civ. P. 15(c)......................................................................2, 25, 26, 27

Fed. R. Civ. P. 15(c)(1)(A) .................................................................29

Fed. R. Civ. P. 15(c)(1)(C) ..................................................25, 26, 27, 29

Fed. R. Civ. P. 15(c)(1)(C)(ii)..............................................................27, 28

**OTHER AUTHORITY**

American Psychiatric Association,
*Gender Dysphoria*, Revisions in the Upcoming DSM-5, (2013),
https://www.psychiatry.org/File%20Library/Psychiatrists/Practice/DSM/APA_DS
M-5-Gender-Dysphoria.pdf ................................................................ 13-14, 17, 18

Appellees Stacey A. Kincaid ("Sheriff Kincaid"), Deputy Garcia, Xin Wang, NP ("Nurse Wang") state the following in opposition to Appellant Kesha T. Williams' ("Ms. Williams") opening brief.

## JURISDICTIONAL STATEMENT

Ms. Williams originally filed this action in the United States District Court for the Eastern District of Virginia on or about November 16, 2020. The district court had jurisdiction under 28 U.S.C. § 1331 as the complaint alleged violations of constitutional rights under 42 U.S.C. § 1983 and violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq* (the "ADA"), and the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq*. The district court had supplemental jurisdiction over Ms. Williams' state law claims pursuant to 27 U.S.C. § 1367, as the state law claims formed part of the same case or controversy as the federal claims. Judge Claude Hilton presided over the case. On June 7, 2021, the district court granted Sheriff Kincaid's motion to dismiss. (JA-046 – 052). On August 18, 2021, the district court granted Deputy Garcia and Nurse Wang's motions to dismiss. (JA-053 – 060). Ms. Williams noticed her appeal from those ruling on September 16, 2021. (JA-061). This Court has jurisdiction pursuant to 28 U.S.C. § 1291, as the district court's order was a final order.

## STATEMENT OF THE ISSUES

**ISSUE 1**.    Whether the district court correctly held that an individual with gender dysphoria fails to state a claim under the ADA and/or the Rehabilitation Act when the individual fails to allege that their gender dysphoria resulted from a physical impairment because such a condition is excluded from the ADA and/or the Rehabilitation Act's definition of disabled.

**ISSUE 2**.    Whether the district court correctly held that Ms. Williams failed to state a gross negligence claim against Sheriff Kincaid under the common law of Virginia because the allegations show Sheriff Kincaid exercised some degree of care to ensure the safety of inmates at the jail by enacting standards and procedures related to inmate safety.

**ISSUE 3**.    Whether the district court correctly held that Ms. William's state law claims and § 1983 claims against Deputy Garcia and Nurse Wang based on alleged conduct that occurred prior to February 12, 2019, were barred by the statute of limitations because the Amended Complaint did not relate back to the filing of the original complaint under Federal Rule of Civil Procedure 15(c).

**ISSUE 4**.    Whether the district court correctly held that Ms. Williams failed to state a gross negligence claim against Nurse Wang under the common law of Virginia.

**ISSUE 5**.    Whether the district court correctly held that Deputy Garcia was not grossly negligent because he was abiding by and following the Sheriff's policies.

## STATEMENT OF THE CASE

On November 16, 2020, Ms. Williams filed her complaint commencing the underlying the litigation against Sheriff Kincaid.  (JA-002).  In addition to Sheriff Kincaid, Ms. Williams also named John Does as defendants.  On February 12, 2021, Ms. Williams amended her complaint replacing two of the John Doe defendants with Deputy Garcia and Nurse Wang.  (JA-008).  The Amended Complaint's allegations stem from a six-month incarceration at the Fairfax County Adult Detention Center (the "FCADC."

On November 16, 2018, Ms. Williams was booked at the FCADC.  (JA-011, 014).  "Ms. Williams is a transgender woman, an individual whose gender identity (female) is different from the gender (male) assigned to her at birth."  (JA-011). "Ms. Williams suffers from gender dysphoria . . . ."  (JA-011).  Sheriff Kincaid, who is "responsible for the implementation of the FCADC's policies and procedures, as well as the welfare of inmates . . . ,"  maintains a policy that states "[m]ale inmates shall be classified as such if they have male genitals" and that "[f]emale inmates shall be classified as such if they have female genitals."  (JA-012, 015).

Upon her booking, Ms. Williams "underwent an initial medical evaluation pursuant to FCADC policy." (JA-014). "During this evaluation, Ms. Williams informed the medical provider, [Nurse] Wang, that she is transgender, that she lives full-time as a woman and identifies as a woman, that she has been on hormone treatment for the past fifteen (15) years, and that her current hormone medication regimen consists of a daily pill and a bi-weekly injection." (JA-014). In response, "[Nurse] Wang asked Ms. Williams whether she had undergone bottom surgery or if she still had the genitalia with which she was born" and "[a]fter hearing Ms. Williams' answers, [Nurse] Wang changed Ms. Williams' records and labeled her as 'male' for the purposes of housing classification." (JA-014 – 015).

During the initial medical evaluation, "Ms. Williams completed a medical records release form on November 16, 2018." (JA-017). Nurse Wang put in her treatment notes that "heath care staff were to contact Ms. Williams' physician and follow up with Ms. Williams once her medical records were received." (JA-017). Nurse Wang "did not consult with Ms. Williams' medical records or physicians prior to stopping her hormone treatments." (JA-017). Ms. Williams medical records were received on December 4, 2018. (JA-017). On December 10, 2018 Nurse Wang ordered Ms. Williams' medication and on the following day Nurse Wang initiated treatment. (JA- 018). During Ms. Williams' incarceration, "[Nurse] Wang and Dr. Kassa were, at all relevant times medical professionals who were employed or

contracted by the Fairfax County Sheriff's Office to provide medical treatment to inmates at the FCADC" and "were the individuals primarily responsible for Ms. William's medical treatment . . . ." (JA-012).

"Sheriff's deputies at the FCADC proceeded to place Ms. Williams in male housing based solely on the determination by [Nurse] Wang that Ms. Williams had male genitalia." (JA-015). Pursuant to Sheriff Kincaid's policies, Ms. Williams was not allowed to shower privately and her requests to be searched by a female deputy were denied. (JA-021). Specifically, in January 2019, pursuant to policy, Deputy Garcia "a male deputy, searched Ms. Williams and stated, 'Sir, you are a male and I need to search you,' before proceeding to pat Ms. Williams down in a highly aggressive manner," and "Garcia's search of Ms. Williams resulted in physical injury to Ms. Williams, including bruising to Ms. Williams' right breast. This injury caused Ms. Williams pain for several days." (JA-021 – 022). "After completing his search of Ms. Williams' person, Garcia stepped to the side of the room and gestured toward Ms. Williams while interacting with other deputies. Garcia mocked Ms. Williams and made light of his actions in searching her person." (JA-022).

Ms. Williams was released from FCADC custody on May 20, 2019. (JA-017). The Amended Complaint asserted claims against (1) Sheriff Kincaid, in her official capacity only, for policies that discriminated based on sex in violation of the Fourteenth Amendment, for failing to accommodate in violation the

ADA/Rehabilitation Act, and for gross negligence under Virginia common law; (2) Deputy Garcia, in his individual and official capacities, under the Equal Protection Clause of the Fourteenth Amendment for discrimination based on sex and for gross negligence under Virginia common law; and (3) Nurse Wang, in her official and individual capacities, for deliberate indifference under the Eighth Amendment, for failing to accommodate in violation the ADA/Rehabilitation Act, and for gross negligence under Virginia common law.

## SUMMARY OF THE ARGUMENT

Jail conditions are always far from ideal, and to say that circumstances alleged by Ms. Williams' are far from ideal would minimize the struggles she and other transgender people face. While her Amended Complaint makes those general struggles the focus of claims, her specific allegations are the issue. Whether it be misplaced, too little or too late, her allegations are riddled with issues and the district court correctly granted the Sheriff Kincaid, Deputy Garcia, and Nurse Wang's Motions to Dismiss Ms. Williams' claims against them.

As it relates to Ms. Williams' failure to accommodate claim under the ADA/Rehabilitation Act, Ms. Williams' claim is fatally flawed because her allegations are insufficient to show that she is a qualified individual with a disability. Ms. Williams has gender dysphoria which presents as "discomfort or distress that is caused by a discrepancy between a person's gender identity and that person's sex

assigned at birth (and the associated gender role and/or primary and secondary sex characteristics.[)]" (JA-011). Under the plain language of the ADA/Rehabilitation Act, gender identity disorders are excluded from the definition of disability, unless they are the result of a physical impairment. Ms. Williams did not plead that her gender dysphoria is the result of a physical impairment and, therefore, her ADA/Rehabilitation Act claim against Sheriff Kincaid fails and was correctly dismissed.

Ms. Williams for the first time on appeal, challenges the constitutionality of the exclusion. As this argument was not raised in the district court, it is subject to review for plain error on appeal. The exclusion applies to all individuals who have a gender identity disorder, whether the individual is male, female, transexual, transgender, or gender nonconforming. The "discrimination" is based on physical impairment, not sex and, thus, the exclusion is valid on its face and there is no obvious error in the district court's application.

As it relates to the claims against Deputy Garcia and Nurse Wang which are based on alleged conduct that occurred prior to February 12, 2019, those claims are barred by the applicable statute of limitations. The original complaint was timely filed. The original complaint, however, did not name Deputy Garcia or Nurse Wang. Instead, the original complaint used John Doe placeholders. The Amended

Complaint was filed on February 12, 20219, and replaced the John Doe placeholders with Deputy Garcia and Nurse Wang.

As the use of a John Doe placeholder is not a "mistake" under Federal Rule of Civil Procedure 15 because it is not based on an error, misconception, misunderstanding, or erroneous belief, the Amended Complaint does not relate back to the original complaint. Therefore, the Amended Complaint's claims against Deputy Garcia and Nurse Wang based on alleged conduct that occurred prior to February 12, 2019, are barred by the applicable two-year statute of limitations, and this Court should affirm the judgment of decision of the district court.

As it relates to the state law gross negligence claim against Sheriff Kincaid, the Amended Complaint's factual allegations are insufficient to state a claim for negligence, let alone rise to the level required to state a claim for gross negligence. Ms. Williams' gross negligence claim against Sheriff Kincaid is based on the claim that Sheriff Kincaid "failed to enact *appropriate* standards and procedures that would have prevented the harm she experienced." (JA-032) (emphasis added). Under Virginia law, this allegation is fatal to Ms. Williams' claim. The allegation itself indicates that Sheriff Kincaid exercised some degree of care, which is all that is required to defeat a gross negligence claim in Virginia. As a result, the district court correctly dismissed the gross negligence claim against Sheriff Kincaid.

As it relates to the state law gross negligence claim against Deputy Garcia, even if not barred by the statute of limitations, the allegations were insufficient to state a gross negligence claim. The foundation of the gross negligence claim against Deputy Garcia is that he performed a cross-gender search. However, Deputy Garcia performed the search because pursuant to the Fairfax County Sheriff's Office Standard Operating Procedures "[i]f the inmate is housed with the male population, the inmate shall be searched by male staff only." (JA-021). Following the jail's operating procedures shows an exercise of some degree of care, which is all that is required to defeat a gross negligence claim in Virginia. Further, there is no nexus between the alleged grossly negligent conduct and the injury because there are no allegations that indicate the alleged injury from the "aggressive" search resulted because of the sex of the person conducting search. As a result, the district court correctly dismissed the gross negligence claim against Deputy Garcia.

As it relates to the state law gross negligence claim against Nurse Wang, even if not barred by the statute of limitations, the allegations were insufficient to state a gross negligence. The allegations against Nurse Wang are based on the provision of health care services which, as the district court held, makes Ms. Williams' claim against Nurse Wang a medical malpractice claim presented as a gross negligence claim. Ms. Williams' appeal does not challenge this holding and, thus, there is no basis to deem the district court erred in any way for dismissing the claim. Despite

the waiver, the Amended Complaint failed to sufficiently plead a gross negligence claim against Nurse Wang under Virginia's Medical Malpractice Act. Ms. Williams' allegations that Nurse Wang was not the only provider responsible for Ms. Williams' care are fatal to her gross negligence claim because a medical malpractice claim seeking to hold a provider liable for another's actions is impermissible in Virginia. As a result, the district court correctly dismissed the gross negligence claim against Nurse Wang.

As it relates to the § 1983 equal protection claim against Deputy Garcia, even if it is not barred by the statute of limitations, review is not proper at this time because the district court did not make any determinations as to sufficiency of the pleadings. However, Ms. Williams' failed to sufficiently plead allegations that show disparate treatment (1) resulting from intentional or purposeful discrimination or (2) that is not reasonably related to penological interests. Ms. Williams' allegations failed to make the requisite showing that there was any intentional or purposeful discrimination on behalf of Deputy Garcia because the Amended Complaint expressly alleged that "[i]f not for the policy enacted by Kincaid and followed by her subordinates at FCADC, the constitutional injury suffered by Ms. Williams would not have occurred." As a result, the § 1983 claim against Deputy Garcia was properly dismissed.

Finally, as it relates to the § 1983 Eighth Amendment deliberate indifference claim against Nurse Wang, even if not barred by the statute of limitations, Ms. Williams failed to plead sufficient facts to state a claim.  First, Ms. Williams, for the first time on appeal, asserts the position that the continuing violation doctrine applies to her deliberate indifference claim against Nurse Wang.  Ms. Williams has not set forth any argument as to why she should be exempt from the general rule that issues raised for the first time on appeal will not be considered.  As such, there are no exceptional circumstances justifying departure from the general rule, and this Court should not consider the newly raised issue.

Notwithstanding, Ms. Williams allegations regarding delay in treatment do not rise to the level of deliberate indifference. Ms. Williams alleged that (1) Nurse Wang's notes indicated that health care staff were to obtain Ms. Williams' medical records, (2) two weeks after Ms. Williams completed a medical records release form, another nurse asked Ms. Williams to complete the form again, and (3) Nurse Wang received Ms. Williams' records on December 4, 2018 and six days later ordered Ms. Williams' hormone therapy treatments.  Nurse Wang was providing medical care.

Additionally, another hurdle that Ms. Williams cannot overcome is that the allegations do not show that the delay in Ms. Williams' initial treatment caused further injury or resulted in substantial harm to Ms. Williams.  Two weeks after her initial evaluation, Ms. Williams asked for "a sick call visit, due to symptoms she was

experiencing as a result of the sudden cessation of her hormone therapy." (JA-017). This does not rise to the level of substantial harm that the Eight Amendment requires. It cannot be inferred that Nurse Wang disregarded a risk when electing to wait for Ms. Williams' medical records because two weeks passed without issues.

To the extent Ms. Williams claims she was under the care of multiple providers, her allegations failed to show supervisory liability. There are no allegations that indicate Nurse Wang had actual or constructive knowledge that any subordinate engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Ms. Williams or that Nurse Wang's response was so inadequate to rise to the level of deliberate indifference. As a result, the district court correctly dismissed the § 1983 Eighth Amendment deliberate indifference claims against Nurse Wang.

## ARGUMENT

### I. Standard of Review.

When reviewing the grant of a motion to dismiss, an appellate court reviews the case *de novo*. *Nemet Chevrolet*, *Ltd. v. Consumeraffairs.com*, *Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). As with the district court upon initial review, the Court must draw all reasonable inferences in favor of the appellants; however, the Court is not bound to "accept the legal conclusions drawn from the facts," nor to "accept as true unwarranted inferences, unreasonable conclusions or arguments." *Id*. A plaintiff

must allege "a plausible claim for relief," instead of merely state facts that leave open "the *possibility* that a plaintiff might later establish some set of undisclosed facts to support recovery." *McCleary-Evans v. Md. Dep't of Transp.*, *State Highway Admin.*, 780 F.3d 582, 587 (4th Cir. 2015) (emphasis in original).

## II.      Judicial Notice Regarding Ms. Williams' ADA/Rehabilitation Act Claims.

Ms. Williams' brief relies heavily on the American Psychiatric Association's (the "APA") publication, the Diagnostic and Statistical Manual of Mental Health Disorders, Fifth Edition (the "DSM-5"), that is (1) not attached to the Amended Complaint, (2) not referenced in the Amended Complaint, and (3) not referenced anywhere in the Record. Moreover, Ms. Williams' credits her definition of gender dysphoria to the Word Professional Association for Transgender Health ("WPATH"), thus, precluding the inference that DSM-5 is incorporated by reference as the source of definition for gender dysphoria. (JA-011). Accordingly, Ms. Williams' cannot rely on the information contained in the DSM-5 to bolster the allegations contained in the Amended Complaint.

To the extent this Court considers Ms. Williams' arguments which rely on the DSM-5, this Court should also take notice of a two-page statement regarding the revisions in the DSM-5 related to gender dysphoria published by the APA. American Psychiatric Association, *Gender Dysphoria*, Revisions in the Upcoming DSM-5, (2013),

https://www.psychiatry.org/File%20Library/Psychiatrists/Practice/DSM/APA_DSM-5-Gender-Dysphoria.pdf.

### III. Ms. Williams' Failed to State a Failure to Accommodate Claim under the ADA/Rehabilitation Act because an Individual with Gender Dysphoria Not Resulting from Physical Impairment is Not Disabled Under the Acts.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). However, the plain language of the ADA and the Rehabilitation Act excludes "gender identity disorders not resulting from physical impairments" from the definition of "disability." 42 U.S.C. § 12211(b)(1); 29 U.S.C. § 705(20)(F).

The Amended Complaint alleged that Ms. Williams' is disabled under the ADA because she suffers from gender dysphoria. (JA-011, 031). *See Northrop Grumman Sys. Corp.*, 418 F. Supp. 3d 921, 930 (N.D. Ala. 2019) ("this court

concludes that a condition of 'gender dysphoria' [formerly described as a 'gender identity disorder'] that does not result from a physical impairment is expressly excluded from the definition of disabilities covered by the Americans with Disabilities Act"). The Amended Complaint does not allege that Ms. Williams' gender dysphoria is the result of a physical impairment. While Ms. Williams' allegations suggested that she would meet the definition of disabled, her allegations also placed her within the exclusion. Thus, the question is not whether gender dysphoria could possibly be the result of the physical impairment, but rather the question is whether the Amended Complaint's allegations made it plausible, beyond mere speculation, that Ms. Williams' gender dysphoria is the result of a physical impairment.

First, the Amended Complaint explained that gender dysphoria is "discomfort or distress that is caused by a discrepancy between a person's gender identity and that person's sex assigned at birth (and the associated gender role and/or primary and secondary sex characteristics.[)]" (JA-011). However, nothing in the Amended Complaint's definition of gender dysphoria indicates that gender dysphoria, generally, results from a physical impairment. Next, the Amended Complaint failed to state any allegations sufficient to show that Ms. Williams' specific diagnosis resulted from physical impairment. *See Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d 744, 755 (S.D. Ohio 2018) ("Nowhere in the Amended Complaint did

Parker allege that her gender dysphoria was caused by a physical impairment or that gender dysphoria always results from a physical impairment"); *see also Lange v. Houston Cty.*, *Georgia*, No. 5:19-CV-392, 2020 WL 6372702, at *6 (M.D. Ga. Oct. 30, 2020), *reconsideration denied*, No. 5:19-CV-392, 2020 WL 7634054 (M.D. Ga. Dec. 22, 2020).

In *Parker*, the plaintiff argued that gender dysphoria results from physical impairments because "a number of medical journal articles" report that "individuals with gender dysphoria exhibit differences in brain structure and physiological responses compared to control groups." *Parker*, 307 F. Supp. 3d at 754. However, the district court found that "[n]owhere in the Amended Complaint did Parker allege that her gender dysphoria was caused by a physical impairment or that gender dysphoria always results from a physical impairment" and that the medical journals were not a part of the pleadings. *Id*. at 755. The district court went on to state that even if such evidence was contained in the complaint, the court was "not convinced that a mere difference in brain structure or physiology, by itself, is necessarily a 'physical impairment'—it may have physical underpinnings in the brain, but not every physical difference between two groups implies that one of the groups is impaired in some way." *Id.*

In *Lange*, the defendant argued that plaintiff failed to sufficiently allege their gender dysphoria was the result of physical impairment because they did not allege

that plaintiff's "*own* dysphoria was caused by an atypical interaction of the endocrine and neurological systems." *Id.* (emphasis original). However, the district court found that the plaintiff's specific allegation that their gender dysphoria resulted from a physical impairment was sufficient to survive a motion to dismiss. *Id.*

The analysis can end here. Ms. William's allegations are not sufficient to show that her gender dysphoria is the result of a physical impairment, and Ms. Williams' offers no argument to suggest otherwise. The arguments in Ms. Williams' brief take the position that gender dysphoria simply does not fall under the exclusion or that in, general, it is the result of physical impairment. These arguments rely heavily on the DSM-5 which, as previously argued, should not be considered on appeal. To the extent the Court takes notice of or incorporates the DSM-5 into the Amended Complaint, Ms. William's allegations still remain insufficient.

Ms. Williams' argues that gender dysphoria is a different condition than the gender identity disorder that appears in the ADA and the Diagnostic and Statistical Manual of Mental Health Disorders III (the "DSM") which existed at the time the ADA was enacted. (Appellant Br. 33). In 2013, American Psychiatric Association (the "APA") released the DSM-5 and published a two-page statement regarding the revisions as it relates to gender dysphoria. American Psychiatric Association, *Gender Dysphoria*. This statement asserts that the DSM-5 does not set out a

completely different condition; gender dysphoria is merely a revision of gender identity disorder.

The APA stated that in the "fifth edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), people whose gender at birth is contrary to the one they identify with will be diagnosed with gender dysphoria. *Id.* at 1. The APA went on to explain that "[t]his diagnosis is a revision of DSM-IV's criteria for gender identity disorder and is intended to better characterize the experiences of affected children, adolescents, and adults." *Id.* The APA notes that gender dysphoria has its own chapter in the DSM-5 "and will be separated from Sexual Dysfunctions and Paraphilic Disorders." *Id.* There is no indication it is separated from gender identity disorders.

Rather, the APA explains that diagnostic terms can have a stigmatizing effect and in attempting to remove the stigma, the APA "[r]eplac[ed] 'disorder' with 'dysphoria' in the diagnostic label" because it "is not only more appropriate and consistent with familiar clinical sexology terminology, it also removes the connotation that the patient is 'disordered.'" American Psychiatric Association, *Gender Dysphoria*, at 2. The APA goes on clarify that "[u]ltimately, the changes regarding gender dysphoria in DSM-5 respect the individuals identified by offering a diagnostic name that is more appropriate *to the symptoms and behaviors they*

*experience* with-out jeopardizing their access to effective treatment options." *Id.* (emphasis added).

In line with the DSM-5's focus on symptoms, Ms. Williams' brief focuses on the disabling symptoms of gender dysphoria, however, the fact that gender dysphoria is disabling is not at issue. Again, the issue is whether gender dysphoria which might otherwise qualify as disability under the ADA is subject to the exclusion. The exclusion is not based on symptoms. The exclusion is based on cause, specifically, whether the gender dysphoria results from a physical impairment. The APA states that "[t]he critical element of gender dysphoria is the *presence of clinically significant distress* associated with the condition." *Id*. at 1. (emphasis added). The DSM-5 does nothing to change the cause of gender dysphoria.

Ms. Williams' brief cites to page 457 of the DSM-5 in support of the argument that gender dysphoria "does not fall with the exclusion of 'gender identity disorders that do not result from physical impairments." (Appellant Br. 47). That subsection of the gender dysphoria chapter, however, indicates that gender dysphoria can result from a disorder of sex development, which would equate to resulting from physical impairment. That subsection, however, does not indicate that all gender dysphoria results from a physical impairment. The DSM-5 fails to, in and of itself, make gender dysphoria a condition with a "known physical basis." Thus, it remains that

Ms. Williams' failed to allege any facts that would indicate her gender dysphoria was the result of a physical impairment.

For these reasons, Ms. Williams' argument and the cases cited in support are not persuasive. First, in *Blatt v. Cabela's Retail*, *Inc.*, the Eastern District of Pennsylvania cited to the legislative history, stating that § 12211's exclusions can be seen as two categories: "non-disabling conditions that concern sexual orientation or identity, and second, disabling conditions that are associated with harmful or illegal conduct." No. 5:14-CV-04822, 2017 WL 2178123, at *3 n. 2 (E.D. Pa. May 18, 2017). These two categories coincide with subsection (a) and subsection (b) of § 12211. Although "gender identity disorders" is found in the text of subsection (b), the second category, the district court then determined that a proper interpretation of the statute would place gender dysphoria in subsection (a), the first category. *Id.* at 3 – 4. Then upon that reasoning, the district court determined that if gender dysphoria substantially limited a major life activity, then it was no longer subject to the first category of "non-disabling" conditions. *Id.*

First, *Blatt's* statutory interpretation is improper. The district court started with the legislative history, and based on its interpretation of legislative history, ignored the plain language of the text under the suggestion that the ADA is a remedial statute. *Id.* at 3; *cf. Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193, 197 (2007) (When interpreting a statute, "[w]e

begin, as always, with the text of the statute"). The fact that the ADA is a remedial statute does not allow the court to re-write the text. *See Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961 (7th Cir. 2004).[1]

Second, *Blatt's* reasoning is flawed. The exclusion under § 12211(b)(1) is just that, an exclusion. As an exclusion, it applies when a health condition would otherwise qualify under the definition of disability. Under the ADA, a plaintiff must meet the definition of disability – with the exception of when a plaintiff is perceived as disabled – which requires "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Thus, the fact that Ms. William's argues her gender dysphoria meets the definition of disability because it limits a major life activity or that it can be alleviated through treatment does nothing to avoid § 12211(b)(1)'s exclusion.

Next, in *Doe v. Massachusetts Dep't of Corr.*, the district held that the plaintiff "raised a dispute of fact that her [gender dysphoria] *may* result from physical

---

[1] The ADA relies on 42 U.S.C. § 1981a for recovery of compensatory and punitive damages. Specifically, the text of § 1981a cites "42 U.S.C. § 12112." 42 U.S.C. § 1981a(2). ADA retaliation claims are authorized under § 12203. Although the 1991 Civil Rights Act expanded the remedies available with respect to certain types of ADA claims, ADA retaliation claims were not specifically referenced in § 1981a. *Kramer,* 355 F.3d at 964 – 65. In *Kramer*, the U.S. Court of Appeals for the Seventh Circuit confirmed that "[a] close reading of the plain language" of the relevant statutory text "makes it clear that the statute does not contemplate compensatory and punitive damages for a retaliation claim under the ADA." *Id.* at 965. Ultimately, the remedial nature of the ADA was not sufficient to overcome the plain language of the statute.

causes." No. CV 17-12255-RGS, 2018 WL 2994403, at \*6 (D. Mass. June 14, 2018) (emphasis added); *cf. McCleary-Evans*, 780 F.3d at 587 (A plaintiff must allege "a plausible claim for relief," instead of merely state facts that leave open "the *possibility* that a plaintiff might later establish some set of undisclosed facts to support recovery") (emphasis in original). The support for this holding was "recent studies demonstrating that [gender dysphoria] diagnoses have a physical etiology, namely hormonal and genetic drivers contributing to the in utero development of dysphoria." *Id.* The district court mistook a physical etiology as the same as resulting from a physical impairment.

In further support of its holding, the district court relied on the change from gender identity disorder to gender dysphoria in the DSM, specifically noting how the DSM-5 "requires attendant disabling physical symptoms, in addition to manifestations of clinically significant emotional distress. *Id.* Again, this distinction has no bearing on whether or not the condition resulted from a physical impairment. Under the exclusion, the disabling physical conditions are not relevant.

Ms. Williams also cites *Shorter v. Barr*, 2020 WL 1942785 (N.D. Fla. Mar. 13, 2020), *report and recommendation adopted*, 2020 WL 1942300 (N.D. Fla. Apr. 22, 2020); *Tay v. Dennison*, No. 19-CV-00501-NJR, 2020 WL 2100761 (S.D. Ill. May 1, 2020); *Iglesias v. True*, 403 F. Supp. 3d 680, 687 (S.D. Ill. 2019); and *Venson v. Gregson*, No. 3:18-CV-2185-MAB, 2021 WL 673371 (S.D. Ill. Feb. 22, 2021).

These cases are progeny of *Blatt* and *Doe* and they adopt the same flawed reasoning explained above.

The Amended Complaint failed to plead sufficient allegations to show that Ms. Williams' gender dysphoria resulted from physical impairments. Thus, Ms. Williams' gender dysphoria is not a "disability" under the ADA because it is an identity disorder not resulting from physical impairments. Therefore, Ms. Williams failed to state a claim under Title II of the ADA or the Rehabilitation Act because she is not a qualified individual with a disability and this Court should affirm the district court's dismissal.

## IV.    <u>42 U.S.C. § 12211(b)(1) Is Facially Valid.</u>

While the Court generally reviews a "challenge to the constitutionality of a statute de novo . . . when the issue is not presented to the district court, as is the case here, [the Court] review[s] for plain error." *United States v. Snyder*, 611 F. App'x 770, 772 (4th Cir. 2015) (citing *United States v. Bostic*, 168 F.3d 718, 721 (4th Cir. 1999); *United States v. Strieper*, 666 F.3d 288, 292 (4th Cir. 2012)). Ms. Williams, for the first time on appeal, challenges the constitutionality of 42 U.S.C. § 12211(b)(1). Ms. Williams' crafts her challenge as being dependent on the district court's holding. (Appellant Br. 48). In actuality, the contention is merely that the district court got it wrong, and the constitutional challenge is an afterthought. As

such, it was never presented to the district court and is subject to review for plain error.

"To establish plain error, the appealing party must show that an error (1) was made, (2) is plain (i.e., clear or obvious), and (3) affects substantial rights." *Strieper*, 666 F.3d at 295 (internal citations omitted). "Even if an appellant satisfies these elements, [the circuit court] may exercise [their] discretion to correct the error only if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks and citations omitted). "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) (internal citations omitted).

Under the ADA and Rehabilitation Act, "gender identity disorders not resulting from physical impairments" are excluded from the definition of "disability." 42 U.S.C. § 12211(b)(1); 29 U.S.C. § 705(20)(F). The ADA as a whole sets forth definitions and requirements for being disabled. This section involving exclusions does the same. It excludes conditions that would otherwise qualify under the definition of disability if they do not result from physical impairments. The statute applies to all individuals who have a gender identity disorder, whether the

individual is male, female, transexual, transgender, or gender nonconforming. The "discrimination" is based on physical impairment, not sex. This exclusion is valid on its face and there is no obvious error in the district court's application. It must, therefore, be affirmed.

## V. Ms. Williams' Claims Against Deputy Garcia and Nurse Wang Based on Alleged Conduct that Occurred Prior to February 12, 2019, are Barred by the Statute of Limitations.

"Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010). The Supreme Court has emphasized that analysis "under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." *Krupski*, 560 U.S. at 541. The emphasis on this analysis, however, does not change the fact that "[w]here an amended pleading changes a party or a party's name, the Rule requires, among other things, that 'the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, *but for a mistake* concerning the proper party's identity.'" *Id.* (emphasis added) (quoting Fed. R. Civ. P. 15(c)(1)(C)); *see also Goodman v. Praxair, Inc.*, 494 F.3d 458, 470 (4th Cir. 2007) (en banc) ("The Rule [now Fed. R. Civ. P. 15(c)(1)(C)] does not concern itself with the

amending party's particular state of mind except *insofar as he made a mistake* . . . .
The Rule's description of when such an amendment relates back to the original
pleading focuses on the notice to the new party and the effect on the new party that
the amendment will have.") (emphasis added).

The keystone to the Relation Back analysis in this case is the "but for a
mistake" requirement. Without the "mistake," Rule 15 cannot be satisfied and what
the proper party knew or should have known is moot. There is no mistake in this
case, so there is no relation back. Neither the Supreme Court nor this Court has
addressed the issue as to whether naming a John Doe defendant qualifies as a
"mistake." Other circuits have held that a plaintiff naming a John Doe because they
do not know who harmed them is not a mistake under Rule 15(c). *See Herrera v.
Cleveland*, 8 F.4th 493, 497 (7th Cir. 2021). In *Herrera*, the Seventh Circuit
addressed the question of whether *Krupski* implicated the John Doe scenario. *Id.*
The court answered that question in the negative.

The Seventh Circuit noted that in reaching its conclusion in *Krupski*, the
Supreme Court "defined mistake as '[a]n error, misconception, or misunderstanding;
an erroneous belief,'" and "described the word to include 'a misunderstanding of the
meaning or implication of something'; 'a wrong action or statement proceeding from
faulty judgment, inadequate knowledge, or inattention'; 'an erroneous belief'; or 'a
state of mind not in accordance with the facts.'" *Id.* (quoting *Krupski*, 560 U.S. at

548) (internal quotation marks and citations omitted). Accordingly, the Seventh Circuit held that *Krupski* "simply did not alter the definition of mistake under Rule 15(c)" and "that naming a John Doe defendant does not constitute 'mistake' within the meaning of Rule 15(c)(1)(C)(ii)." *Id.* at 498; *see also Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (observing that *Krupski* did not abrogate or reconfigure the court's previous decision in which it held "an amendment to replace a John Doe defendant is made not to correct a mistake but to correct a lack of knowledge and is therefore not a mistake under Rule 15(c)(1)(C)" (internal quotation marks omitted)); *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 471 (5th Cir. 2019) (affirming a grant of summary judgment on statute of limitations grounds because "[f]ailing to identify individual defendants cannot be characterized as a mistake"); *Heglund v. Aitkin Cnty.*, 871 F.3d 572, 579 (8th Cir. 2017) (concluding that naming a John Doe defendant is not a "mistake").

"[N]aming a defendant as John Doe in the complaint is not based on an error, misconception, misunderstanding, or erroneous belief," but rather "a deliberate choice" to sue "a fictious individual in lieu of real person." *Herrera*, 8 F.4th at 498. Thus, "the plaintiff names a John Doe defendant knowing full well the factual and legal differences between the nominal defendant and the proper defendant. Such an intentional and informed decision cannot amount to a mistake." *Id.*

Ms. Williams "sued John Doe defendants fully aware that [s]he lacked adequate information to ascertain the [defendants] identities." *Id.* To the contrary, in *Krupski*, the plaintiff "had no idea she lacked knowledge of the proper defendant's identity." *Id.* In other words, "the plaintiff in *Krupski* did *not* know what she did not know" but here Ms. Williams *did* know what she did not know. *See id.* Thus, the Supreme Court did not address the John Doe scenario which is presented in Ms. Williams' case.

Finally, "the definition of 'mistake' under Rule 15(c)(1)(C)(ii) does not extend to a John Doe scenario." *Id.* "*Krupski* does not treat 'inadequate knowledge' and 'mistake' as the same. Based on the full secondary definition cited in [*Krupski*], it is the 'wrong action' stemming from "inadequate knowledge" that amounts to a mistake." *Id.* at 498-499 (citing *Krupski*, 560 U.S. at 548–49). Ultimately, "[n]aming a John Doe defendant as a nominal placeholder is not a wrong action proceeding from inadequate knowledge; it is a proper action on account of inadequate knowledge." *Id.* at 499.

Here, Ms. William's § 1983 and gross negligence claims have statute of limitations periods of two years. *See Graham v. City of Manassas Sch. Bd.*, 390 F. Supp. 3d 702, 709 (E.D. Va. 2019) (internal citations omitted). The basis for Ms. Williams' claims against Deputy Garcia in the Amended Complaint arise from an alleged search that occurred in January 2019. (JA-021 – 022). The claims in the

Amended Complaint regarding Nurse Wang stopping and restarting Ms. Williams'

hormone therapy at the time Ms. Williams was booked occurred between November

16, 2018, and December 11, 2018.  (JA-017 - 018).  When Ms. Williams filed her

original complaint on November 16, 2020, Deputy Garcia and Nurse Wang were not

named as defendants because Ms. Williams did not know the know their names.  As

a result, Ms. Williams elected to use John Doe placeholders for two individuals.  Ms.

Williams replaced the John Doe placeholders with Deputy Garcia and Nurse Wang

in her Amended Complaint which she filed on February 12, 2021.  (JA-008).

In other words, under these circumstances, Ms. Williams did know what she

did not know.  Thus, there was no mistake under Rule 15(c)(1)(C) and, as a result,

Ms. Williams does meet the threshold required under Rule 15(c)(1)(C) to allow the

Amended Complaint to relate back to the filing of the original complaint.  Moreover,

Rule 15 provides that "an amendment to a pleading relates back to the date of the

original pleading when . . . the law that provides the applicable statute of limitations

allows relation back."  Fed. R. Civ. P. 15(c)(1)(A).  Rule 15, therefore, looks to

Virginia law as to whether relation back is permitted.  In Virginia, "neither the Rules

of the Supreme Court of Virginia nor the legislature contemplate [John] Doe

pleadings, aside from the narrow exception for uninsured motorists."  *Frazier v. Red*

*Robin Int'l, Inc.*, 99 Va. Cir. 214 (Fairfax 2018) (citing *Conley v. Bishop*, 32 Va. Cir.

236, 237 (Fairfax 1993)).  On this basis alone, the Amended Complaint cannot relate

back to the original complaint as to Deputy Garcia and Nurse Wang for its allegations involving conduct that occurred prior to February 12, 2019.

The Amended Complaint's claims against Deputy Garcia and Nurse Wang based on alleged conduct that occurred prior to February 12, 2019, are barred by the applicable two-year statute of limitations, and this Court should affirm the judgment of decision of the district court.

## VI. **Ms. Williams' Failed to State a Gross Negligence Claim against Sheriff Kincaid, Deputy Garcia, and Nurse Wang**

In Virginia, gross negligence is "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a *complete* neglect of the safety of such other person." *Elliott v. Carter*, 292 Va. 618, 622, 791 S.E.2d 730, 732 (2016) (emphasis added) (citation omitted). Gross negligence "requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Id.* (quotation omitted). "Because 'the standard for gross negligence [in Virginia] is one of indifference, not inadequacy,' a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Id.* (*quoting Kuykendall v. Young Life*, 261 Fed. Appx. 480, 491 (4th Cir. 2008)).

Ms. Williams' brief sets forth arguments premised on the standard for Eighth Amendment deliberate indifference claims. This comparison is, ostensibly, based on the Virginia Supreme Court's use of the language "showing indifference." *See*

*id*. at 618, 791 S.E.2d at 730. Ms. Williams' arguments, however, improperly conflate Virginia's standard for gross negligence with the Eighth Amendment standard for deliberate indifference.

Ms. Williams' brief sets forth one case involving a gross negligence claim, the remaining cases cited in support involve Eighth Amendment deliberate indifference claims. (Appellant Br. 45 – 47) (citing *Jehovah v. Clarke*, 798 F.3d 169 (4th Cir. 2015) (§ 1983 deliberate indifference claim); *De'Lonta v. Angelone*, 330 F.3d 630 (4th Cir. 2003) (§ 1983 deliberate indifference claim); *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990) (§ 1983 deliberate indifference claim); *Jackson v. Lightsey*, 775 F.3d 170 (4th Cir. 2014) (§ 1983 deliberate indifference claim)). In the case involving gross negligence, *Gilstrap v. Huntington Ingalls Inc.*, the holding reflects the appropriate standard that the exercise of some degree of care can defeat a gross negligence claim.

In *Gilstrap*, the Court denied a motion to dismiss based on the allegations that the defendant "chose to do nothing to prevent . . . [the plaintiff] from being exposed to dangerous levels of airborne asbestos fibers." *Gilstrap*, No. 4:19CV68, 2019 WL 8890001, at *6 (E.D. Va. Dec. 9, 2019). The district court noted that the defendant knew that the asbestos was hazardous "and knew that those in the vicinity of construction would inhale the fibers, yet took *no precautions* to protect those individuals from harm." *Id*. (emphasis added). The district court held that this

"sufficiently allege[d] 'indifference to others, disregarding prudence to the level that safety of others is *completely* neglected.'" *Id.* at *6 (emphasis added) (quoting *Wilby v. Gostel*, 578 S.E.2d 796, 801 (Va. 2003)).

*Gilstrap*, is distinguishable from this case because there the defendant did absolutely nothing. Put differently, the defendant did not exercise any degree of care to the point that there was complete neglect. Whereas in this case, the existence of some degree of care is inherent in the Amended Complaint's allegations, and as a result, the allegations themselves foreclose claims for gross negligence against Sheriff Kincaid, Deputy Garcia, and Nurse Wang.

**A. Ms. Williams' Failed to State a Common Law Gross Negligence Claim against Sheriff Kincaid Because She Enacted Standards and Procedures Related to Inmate Safety.**

The Amended Complaint's factual allegations are insufficient to state a claim for negligence, let alone rise to the level required to state a claim for gross negligence. The Amended Complaint alleged that "Kincaid failed to appropriately supervise, review, and ensure the provision of adequate care and treatment to Ms. Williams by custody and medical, and failed to enact *appropriate* standards and procedures that would have prevented the harm she experienced." (JA-032) (emphasis added). The allegations themselves foreclose claims for gross negligence "[b]ecause 'the standard for gross negligence [in Virginia] is one of indifference, not inadequacy,' a claim for gross negligence must fail as a matter of law when the

evidence shows that the defendants exercised some degree of care." *Elliott*, 292 Va. at 622, 791 S.E.2d at 732 (*quoting Kuykendall*, 261 Fed. Appx. at 491). The existence of some degree of care is inherent in the Amended Complaint's allegations.

Finally, the Amended Complaint failed to sufficiently plead the necessary elements of a common law negligence claim. "The elements of an action in negligence are a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was **the proximate cause of injury**, resulting in damage to the plaintiff." *Blue Ridge Serv. Corp.of Virginia v. Saxon Shoes, Inc.*, 271 Va. 206, 218, 624 S.E.2d 55, 62 (2006) (emphasis added). The only physical injury the Complaint alleges is that Ms. Williams' suffered bruising to her right breast as a result of Garcia's search. (JA-022). Ms. Williams' grievance, however, is not with the search itself but the fact that it was conducted by a male rather than a female. There are no allegations that indicate the alleged injury resulted because of the sex of the person conducting search. As a result, the Complaint fails to plausibly connect the alleged injury to the allegation that Sheriff Kincaid "failed to enact appropriate standards and procedures that would have prevented the harm she has experienced." (JA-032).

The Amended Complaint's allegations were not sufficient to state a gross negligence claim against Sheriff Kincaid, and this Court should affirm the district court's dismissal.

### B. Ms. Williams Failed to State a Common Law Gross Negligence Claim against Deputy Garcia Because He Was Following the Jail's Policies.

First, the alleged conduct in support of Ms. Williams' gross negligence claim against Deputy Garcia is premised on conduct that occurred prior to February 12, 2019. As a result, the claim is, as previously argued, time barred under Virginia's two-year statute of limitations for personal injuries. Va. Code § 8.01-243. Notwithstanding, the Amended Complaint's allegations were insufficient to state a gross negligence claim against Deputy Garcia. The basis for the gross negligence claim against Deputy Garcia is that he performed a cross-gender search.

The specific allegations as to Deputy Garcia are that (1) he "searched Ms. Williams and stated, 'Sir, you are a male and I need to search you,' before proceeding to pat Ms. Williams down in a highly aggressive manner," (2) the search "resulted in physical injury to Ms. Williams, including bruising to Ms. Williams' right breast," and (3) he "mocked Ms. Williams and made light of his actions in searching her person." (JA-021 – 022). None of these allegations are sufficient to establish a gross negligence claim.

"Ordinarily, the question whether gross negligence has been established is a matter of fact to be decided by a jury. Nevertheless, when persons of reasonable minds could not differ upon the conclusion that such negligence has not been established, it is the court's duty to so rule." *Elliot*, 292 Va. at 622, 791 S.E.2d at 732 (*quoting Frazier v. City of Norfolk*, 234 Va. 388, 393, 362 S.E.2d 688, 691 (1987)).

Here, the Amended Complaint alleged that under the Fairfax County Sheriff's Office Standard Operating Procedures "[i]f the inmate is housed with the male population, the inmate shall be searched by male staff only." (JA-021). The Amended Complaint alleged that Ms. Williams was housed with the male population; consequently, the Amended Complaint alleges that Deputy Garcia was following the jails operating procedures. (JA-015). Following the jail's operating procedures shows an exercise of some degree of care and cannot be said to shock fair-minded persons or be "an utter disregard of prudence." The Amended Complaint's true grievance is that Ms. Williams was housed with the male population, a decision that is not alleged to have been Deputy Garcia's. Essentially, the claim attempts to hold Deputy Garcia liable for following procedures based on someone else's determination, which does not rise to the level of gross negligence.

Further, the Amended Complaint, again, failed to sufficiently plead the necessary proximate cause elements of a common law negligence claim. *See Blue*

*Ridge Serv. Corp.of Virginia*, 271 Va. at 218, 624 S.E.2d at 62. The only physical injury the Complaint alleges is that Ms. Williams' suffered bruising to her right breast as a result of Deputy Garcia's search. (JA-022). Again, Ms. Williams' grievance, however, is not with the search itself but the fact that it was conducted by a male rather than a female. There are no allegations that indicate the alleged injury resulted because of the sex of the person conducting search. Thus, there is no nexus between the alleged grossly negligent conduct and the injury.

Moreover, Ms. Williams argues that Deputy Garcia conducted an intentionally disrespectful and aggressive[2] search of Ms. Williams. (Appellant Br. 43). Thus, to the extent that Ms. Williams argues the manner in which the search was conducted is relevant, such an argument cuts against her negligence claim as she argues intentional conduct.

---

[2] Notwithstanding being labeled "aggressive," there are no allegations indicating how the search was beyond what is authorized by the Fourth Amendment. *See Johnson v. Dep't of Alcoholic Beverage Control*, No. 3:15-CV-00055, 2016 WL 7235836, at *7 (W.D. Va. Dec. 13, 2016) ("The court finds ample authority indicating that plaintiff's claims of gross negligence, battery, and assault 'rise or fall' with his excessive force claim"); *see also Ware v. James City Cty.*, 652 F. Supp. 2d 693, 711-712 (E.D. Va. 2009) ("While the *Veney* court analyzed whether [throwing the plaintiff to the ground was] 'grossly negligent,' other courts appear to reverse the equation, asking whether the actions were 'objectively reasonable' and, presumably, therefore not grossly negligent . . . While using different terms, these courts appear to be describing the [same] applicable test.")

Aside from being time barred, the Amended Complaint's allegations were not sufficient to state a gross negligence claim against Deputy Garcia, and this Court should affirm the district court's dismissal.

**C.    Ms. Williams Failed to State a Common Law Gross Negligence Claim against Nurse Wang Because the Allegations Were Not Sufficient to State a Claim Under the Virginia Medical Practice Act.**

Ms. Williams' gross negligence claims against Nurse Wang proceed pursuant to two sets of allegations.  First, there are the allegations surrounding Ms. Williams' initial medical evaluation and providing her hormone treatments.  (JA-017 – 018). Second, there are the allegations surrounding the missed hormone treatments in April and May of 2019.  (JA-024).  In Virginia, "all tort claims based on the provision of health care services against health care providers are considered malpractice claims and are governed by the Virginia Medical Malpractice Act." *Gedrich v. Fairfax Cty. Dep't of Family Servs.*, 282 F. Supp. 2d 439, 477 (E.D. Va. 2003) ("claims of gross negligence against health care provider defendants are properly considered malpractice claims").  As both sets of allegations are based on the provision of health care services, Ms. Williams' claim against Nurse Wang is in fact a medical malpractice claim presented as a gross negligence claim.

As to the first set of allegations, the stopping of treatment, restarting of treatment, and failure to conduct an individualized assessment.  Those allegations are premised on conduct that occurred prior to February 12, 2019.  As a result, those

claims are, as previously argued, time barred under Virginia's two-year statute of limitations for personal injuries. Va. Code § 8.01-243.

The second set of allegations concerns the missed hormone treatments in April and May of 2019. First, Ms. Williams has waived her arguments as to whether the district court correctly dismissed her gross negligence claims pursuant to Virginia's Medical Malpractice Act. Ms. Williams' did not set forth that issue in her Statement of the Issues and offered no argument to the contrary in her brief. On that basis alone, this Court should affirm the district court's dismissal of the gross negligence claims based on the missed hormone treatments in April and May of 2019 because Ms. William's has failed to challenge it. *See Clark v. Colbert*, 895 F.3d 1258, 1265 (10th Cir. 2018) ("Accordingly, we will not question the reasoning of a district court unless an appellant 'actually argue[s]' against it") (quoting *Phillips v. Calhoun*, 956 F.2d 949, 954 (10th Cir. 1992)).

Notwithstanding the failure to raise the issue, the Amended Complaint failed to sufficiently plead a gross negligence claim against Nurse Wang under Virginia's Medical Malpractice Act. While the Amended Complaint conclusorily alleged that Nurse Wang failed to provide Ms. Williams her injections, the allegations indicate that Nurse Wang was not the only provider responsible for Ms. Williams' care. The Amended Complaint alleged that another doctor was responsible for her care and that Ms. Williams was seen by other nurses. (JA-012, 017). A medical malpractice

claim seeking to hold a provider liable for another's actions is impermissible in Virginia. *Wolf v. Fauquier Cty. Bd. of Sup'rs*, No. 1:06CV945 JCC, 2007 WL 2688418, at *5 (E.D. Va. Sept. 12, 2007*), aff'd sub nom. Wolf v. Fauquier Cty. Bd. of Sup'rs*, 555 F.3d 311 (4th Cir. 2009) ("Although a physician, a nurse, or a hospital each may be held liable in their own right, there is no basis or reason for holding a physician liable for the conduct of another physician, a hospital nurse, or any other hospital employee for medical malpractice under a theory of vicarious liability") (internal quotation marks and citations omitted).

Based on the allegations that another doctor was responsible for her care and that Ms. Williams was seen by other nurses, there are no factual allegations to indicate the failure was a result of Nurse Wang's actions. (JA-012, 017). Accordingly, Ms. Williams' claim against Nurse Wang presumably proceeded under the theory of vicarious liability, and based on the factual allegations, the Amended Complaint sought to improperly hold Nurse Wang liable as a supervisor for a collective failure to provide Ms. Williams with her injections.

Furthermore, in a medical malpractice claim the "plaintiff must establish: (1) the applicable standard of care, (2) a breach of that standard of care, and (3) that this breach proximately caused plaintiff's injuries." *Parker v. United States*, 475 F. Supp. 2d 594, 598 (E.D. Va.), *aff'd*, 251 F. App'x 818 (4th Cir. 2007). The Amended Complaint failed to allege an injury occurring after April 22, 2019, making

it unclear what, if any, injury Ms. Williams could have suffered as a result of the missed injections.  Thus, the Amended Complaint failed to allege sufficient facts to assert that any alleged breach was the proximate cause of an injury.

The allegations regarding the missed hormone treatments are insufficient to state a gross negligence claim against Nurse Wang and, this Court should affirm the district court's holding that Ms. Williams failed to sufficient plead a medical malpractice claim presented as gross negligence claim.

## VII.  Ms. Williams Failed to State a Fourteenth Amendment Equal Protection Claim against Deputy Garcia

The dismissal of Ms. Williams' Fourteenth Amendment Equal Protection claim under 42 U.S.C. § 1983 is not listed in the Statement of Issues.  The claim is, however, raised in the argument section of the brief and is, therefore, addressed herein.  First, the alleged conduct in support of Ms. Williams' equal protection claim against Deputy Garcia is premised on conduct that occurred prior to February 12, 2019.  As a result, the claim is, as previously argued, time barred under the two-year statute of limitations, and this Court should affirm the district court's dismissal.

The district court did not make any determinations as to sufficiency of the pleadings, thus, there is no other ruling that this Court needs to review.  (JA-057 – 058).  Nonetheless, for the sake of completeness and out of an abundance of caution, Ms. Williams' failed to sufficiently plead allegations that show disparate treatment

(1) resulting from intentional or purposeful discrimination or (2) that is not reasonably related to penological interests.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal quotation marks and citations omitted). A plaintiff must "demonstrate that [s]he has been treated differently from others with whom [s]he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (the Equal Protection clause "simply keeps governmental decisionmakers from treating differently persons *who are in all relevant respects alike*") (emphasis added). "Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected . . . a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Borkowski v. Baltimore Cty., Maryland*, 492 F. Supp. 3d 454, 471–72 (D. Md. 2020) (alterations in original) (internal citations omitted).

In this case, the allegations failed to make the requisite showing that there was any intentional or purposeful discrimination on behalf of Deputy Garcia. The

Amended Complaint does not call into question different treatment between genders in jails, for example, separate housing or same gender searches. Rather, the Amended Complaint is alleging disparate treatment through policies connected to the gender classification process.

The Amended Complaint alleged that under the Fairfax County Sheriff's Office Standard Operating Procedures "[i]f the inmate is housed with the male population, the inmate shall be searched by male staff only." (JA-021). Consequently, the Amended Complaint alleged that Deputy Garcia was following the jails operating procedures. Despite Ms. Williams' contentions that Deputy Garcia acted contrary to policy, the Amended Complaint expressly alleged that "[i]f not for the policy enacted by Kincaid and followed by her subordinates at FCADC, the constitutional injury suffered by Ms. Williams would not have occurred." (JA-028) (*see also* JA-026) ("Kincaid instituted the policy by which her subordinates made the determination to process, search and house, Ms. Williams based on her biological sex rather than her gender identity").

These allegations and arguments make it clear that Deputy Garcia's actions occurred due to the policy that housed Ms. Williams in the male housing unit; not because Deputy Garcia was treating Ms. Williams differently than those similarly situated and not because of a discriminatory purpose. These allegations failed to show that the search was conducted differently from the searches of the other

inmates Ms. Williams was housed with or that the search was the result of intentional or purposeful discrimination attributable to Deputy Garcia. Moreover, under these allegations, the search was performed in the same manner as it would have been performed for other inmates with whom Ms. Williams was housed. Thus, the analysis stops at this point since the allegations fail to make the requisite showing.

In the event a plaintiff sufficiently pleads disparate treatment resulting from intentional or purposeful discrimination, which Ms. Williams did not, then "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison*, 239 F.3d at 654. "When equal protection challenges arise in a prison context, however, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner." *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002) (citing *Morrison*, 239 F.3d at 654–55). In the prison context, courts "must determine whether the disparate treatment is 'reasonably related to [any] legitimate penological interests.'" *Id.* (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)). This holds true "even when the alleged infringed constitutional right would otherwise warrant higher scrutiny." *Id.* (citing *Morrison*, 239 F.3d at 655, 656). A plaintiff "must allege facts sufficient to overcome the presumption of reasonableness applied to prison policies." *Id.*

To determine whether a plaintiff's allegations overcome the presumption, courts apply the factors set forth in *Turner v. Safley*, 482 U.S. 78, 89–90 (1987). Under the circumstances set out by Ms. Williams' equal protection claim, three of the four factors are relevant. "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89–90. Second, courts must consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* at 90. Third, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.* at 90–91. This final factor "is not a 'least restrictive alternative' test: prison officials need not set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id.*

Had the Amended Complaint established sufficient allegations to reach this analysis, it would still fail to overcome the presumption. First, the search policy attacked by the Amended Complaint requires male guards in the male housing unit to search the inmates, which Deputy Garcia's alleged actions are in line with, stemmed from the alleged policy for classification and housing by gender. Thus, there is a "valid, rational connection" between the policy and penological interests of the jail. Courts have recognized "legitimate differences between the security

needs of male and female inmates that can justify differential treatment." *Estes v. Virginia Dep't of Corr.*, No. 7:18-CV-602, 2020 WL 1472219, at *7 (W.D. Va. Mar. 26, 2020) (citing *Veney*, 293 F.3d at 734); *see also Washington v. McAuliffe*, No. 7:16-CV-00476, 2019 WL 1371859, at *11 (W.D. Va. Mar. 26, 2019) (rejecting equal protection claim based on differences in grooming policy for men and women in light of testimony that men are more inclined to present security risks than women and that, although women fight, they rarely do so with weapons); *Ashann-Ra v. Commonwealth*, 112 F. Supp. 2d 559, 571–72 (W.D. Va. 2000) (same and citing to defendants' assertions that "female inmates are not as prone to be violent [or] to hide weapons in their hair"); *DeBlasio v. Johnson*, 128 F. Supp. 2d 315, 328 (E.D. Va. 2000) (same), *aff'd*, 13 F. App'x 96 (4th Cir. 2001) (affirming "on the reasoning of the district court").

Ms. Williams does not challenge the sentiment that those legitimate differences can exist, instead she argues that those differences are not applicable to her. In other words, Ms. Williams' claim stems from how she was classified, not how she was treated based on her classification. The allegations against Deputy Garcia are that he searched Ms. Williams who was classified and placed in the male housing unit pursuant to a policy he is not alleged to have created. The jail has a penological interest in classifying and housing based on sex, and a deputy following those procedures and policies pursuant to those classifications inherently falls within

that penological interest. *See Veney*, 293 F.3d at 732 (In the prison context, courts "must determine whether the disparate treatment is 'reasonably related to [any] legitimate penological interests.'") (quoting *Shaw v. Murphy*, 532 U.S. at 225 (2001)).

Second, there were no ready alternatives. The Amended Complaint indicated the search was during a security shakedown. Delaying the search to provide an alternative would have allowed time to hide or destroy contraband for Ms. Williams or other inmates. Additionally, the Amended Complaint alleges that a female officer was present but did not search Ms. Williams indicating the guards were not comfortable with performing the search as requested. Accordingly, Deputy Garcia's alleged actions, following a policy he is not alleged to have created, were reasonably related to the penological interests of the jail.

Aside from being time barred, the Amended Complaint's allegations were not sufficient to state a Fourteenth Amendment equal protection claim against Deputy Garcia, and this Court should affirm the district court's dismissal.

## VIII. <u>Ms. Williams Failed to State an Eighth Amendment Deliberate Indifference Claim against Nurse Wang.</u>

To state an Eighth Amendment violation in the medical context, a prisoner must show "deliberate indifference to serious medical needs of prisoners." *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *De'Lonta*, 330 F.3d at 633-34 (citations omitted). "[O]fficials evince deliberate indifference to a serious medical

need by completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to adequate medical care." *Bridges v. Keller*, 519 F. App'x 786, 787 (4th Cir. 2013) (unpublished) (per curiam) (citing *Estelle*, 429 U.S. at 104–05). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle*, 429 U.S. at 105–06).

Ms. Williams' Eighth Amendment deliberate indifference claims against Nurse Wang proceed pursuant to two sets of allegations. First, there are the allegations surrounding Ms. Williams' initial medical evaluation and providing her hormone treatments. (JA-017 – 018). Second, there are the allegations surrounding the missed hormone treatments in April and May of 2019. (JA-024).

## A.     Initial Hormone Therapy

The first set of allegations entail the stopping of treatment, restarting of treatment, and failure to conduct an individualized assessment. Those allegations are premised on conduct that occurred prior to February 12, 2019. As a result, those claims are, as previously argued, time barred by the two-year statute of limitations. For the first time on appeal, Ms. Williams asserts the position that the continuing violation doctrine applies to her deliberate indifference claim against Nurse Wang. (Appellant Br. 27 – 28). A plaintiff "may not argue the continuing violation doctrine in [the court of appeals]" if "she did not raise the

issue in the district court." *Whitehead v. R.J. Reynolds Tobacco Co.*, 173 F.3d 427 (4th Cir. 1999). The Fourth Circuit "has repeatedly held, issues raised for the first time on appeal generally will not be considered." *Id.* (citing *National Wildlife Fed'n v. Hanson*, 859 F.2d 313, 318 (4th Cir. 1988)). Ms. Williams has not set forth any argument as to why she should be exempt from this rule. Accordingly, "there are no exceptional circumstances justifying departure from the general rule" and this Court should not consider the newly raised issue. *See id.*

Notwithstanding, Ms. Williams failed to allege sufficient facts to show that the delay in the initial hormone therapy was the result of deliberate indifference. A prison health care provider cannot be found liable under the Eighth Amendment, "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Alleged delays in providing adequate care do not rise to the level of deliberate indifference where the delay does not cause further injury or result in some substantial harm to the patient. *Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008); *Kane v. Hargis*, 987 F.2d 1005, 1009 (4th Cir. 1993). Further, a "delay in providing treatment does not violate the Eighth Amendment unless the gravity of the injury is apparent." *Walker v. Hershey*, 979 F.2d 849, 1992 WL 337096 at *2 (4th Cir. 1992) (unpublished) (per curiam) (citing *Cooper v. Dyke*, 814 F.2d 941 (4th Cir. 1987); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986)).

Here, the Amended Complaint alleged that Nurse Wang's notes indicated that health care staff were to obtain Ms. Williams' medical records. Further, the Amended Complaint alleges that two weeks after Ms. Williams completed a medical records release form, another nurse asked Ms. Williams to complete the form again. (JA-017). Nurse Wang received Ms. Williams' records on December 4, 2018 and six days later ordered Ms. Williams' hormone therapy treatments. (JA-017 – 018).

This delay, after needing to have Ms. Williams complete the forms again, at most amounts to an "inadvertent failure" to manage available medication, and thus is not actionable under the Eighth Amendment. *See Ebersole v. Conover*, 2010 WL 3629581, at *6 (W.D. Va. Aug. 27, 2010), *report and recommendation adopted*, 2010 WL 3585833 (W.D. Va. 2010) (citing *Estelle*, 429 U.S. at 105–06) (inmate who missed several dosages of medication due to medical staff error did not rise to the level of deliberate indifference). Again, the crux of the issue is whether the Amended Complaint set forth allegations that show that the delay in Ms. Williams' initial treatment caused further injury or resulted in substantial harm to Ms. Williams which she has not pled. *See Webb*, 281 F. App'x at 166; *Kane*, 987 F.2d at 1009.

The Amended Complaint alleged that Ms. Williams asked for "a sick call visit, due to symptoms she was experiencing as a result of the sudden cessation of her hormone therapy." (JA-017). This allegation indicated that approximately two weeks after her evaluation with Nurse Wang, Ms. Williams began experiencing pain.

This allegation does not amount to a "marked exacerbation of the prisoner's medical condition or frequent complaints of severe pain," which is what the Eighth Amendment requires to make a showing of substantial harm. *See Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015).

Moreover, the allegation that Ms. Williams did not begin complaining of pain for approximately two weeks indicates there was a period of time where were no issues. Thus, it cannot be inferred from the allegations that Nurse Wang disregarded a risk when electing to wait for Ms. Williams' medical records. Once the records were obtained and Ms. Williams' complained of symptoms, the delay was six days. Again, the Amended Complaint conclusory alleged that the period of time without her treatment, "adversely affected her ongoing treatment for gender dysphoria and caused her significant mental and emotional distress." (JA-018). There are no other factual allegations of the harm suffered from the initial delay in receiving the records and six-day delay in receiving her treatment.

Accordingly, the allegations are insufficient to show that as a result of the delay Ms. Williams' suffered a substantial harm or that the gravity of any harm was apparent to Nurse Wang. *See Walker*, 979 F.2d 849, 1992 WL 337096 at *2 (unpublished) (per curiam) ("delay in providing treatment does not violate the Eighth Amendment unless the gravity of the injury is apparent") (citing *Cooper*, 814 F.2d at 941); *Sosebee*, 797 F.2d at 182, 791 S.E.2d at 732. Therefore, aside from

being time barred, the Amended Complaint's allegations were not sufficient to state an Eighth Amendment deliberate indifference claim against Nurse Wang based on the alleged conduct prior to February 12, 2019, and this Court should affirm the district court's dismissal.

## B. Missed Hormone Therapy Treatments

The second set of allegations entail the missed hormone treatments in April and May of 2019. The Amended Complaint indicated that after Nurse Wang started Ms. Williams' hormone therapy on December 11, 2019, she received those treatments without issue until April 22, 2019. (JA-018, 024). Importantly, the Amended Complaint asserted that "NP Wang and Dr. Kassa were the individuals primarily responsible for Ms. Williams' medical treatment." (JA-012). The Amended Complaint also asserted that "Ms. Williams' bi-weekly hormone injections continued to be administered by FCADC under the supervision of NP Wang." (JA-024). Then, the Amended Complaint conclusorily asserted that Nurse Wang failed to provide Ms. Williams with injections on April 22, 2019, and May 6, 2019. (JA-024). Finally, Ms. Williams submitted a written complaint about the missed treatments on May 9, 2019. (JA-024).

There are no factual allegations to show that Nurse Wang's individual conduct is the cause of the missed hormone therapy treatments. At best, these allegations attempt to assert a *Shaw v. Stroud* supervisory liability claim against Nurse Wang.

To state a claim for supervisory liability under § 1983, a plaintiff must show (1) that the supervisor had actual or constructive knowledge that his or her subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Willis v. Blevins*, 966 F. Supp.2d 646, 661-62 (E.D. Va. 2013) (*quoting Shaw v. Stroud*, 13 F.2d 791, 799 (4th Cir. 1994)).

None of the above allegations are sufficient to support any of the three *Shaw v. Stroud* supervisory liability factors set forth above. By the time notice was provided, Ms. Williams was about to be released, and there are no allegations regarding the response to the notice. Moreover, based on these allegations, again, at worst these missed treatments amounts to an "inadvertent failure" to manage available medication, and thus is not actionable under the Eighth Amendment. *See Ebersole*, 2010 WL 3629581, at *6 (inmate who missed several dosages of medication due to medical staff error did not rise to the level of deliberate indifference). At the time of the missed treatments, the Amended Complaint noted that Ms. Williams was put into the Workforce Program. (JA-023). Ms. Williams was released on May 20, 2019. (JA-024).

The Amended Complaint's allegations were not sufficient to state an Eighth Amendment deliberate indifference claim based on the alleged conduct after February 12, 2019, and this Court should affirm the district court's dismissal.

/s/ Alexander Francuzenko
Alexander Francuzenko
Philip C. Krone
COOK CRAIG & FRANCUZENKO, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, Virginia 22030
(703) 865-7480

*Counsel for Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [*12,444*] words.

[    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.    This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>December 29, 2021</u>        <u>/s/ Alexander Francuzenko</u>
                                          *Counsel for Appellees*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 29th day of December, 2021, I caused this Brief of Appellees to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

/s/ Alexander Francuzenko
*Counsel for Appellees*