No. 21-2030

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____


KESHA T. WILLIAMS

*Plaintiff – Appellant*

v.

STACEY A. KINCAID, et al.

*Defendants-Appellees.*


_____


**On Appeal from the United States District Court
for the Eastern District of Virginia
(Case No. 1:20-01397, Hon. Claude Hilton)**

_____

**REPLY BRIEF OF APPELLANT**

Joshua Erlich (VSB No. 81298)
Davia Craumer (VSB No. 87426)
Katherine L. Herrmann (VSB No. 83203)
THE ERLICH LAW OFFICE, PLLC
2111 Wilson Blvd. Suite 700
Arlington, VA 22201
Tel: (703) 791-9087
Fax: (703) 722-8114
Email: jerlich@erlichlawoffice.com
       dcraumer@erlichlawoffice.com
       kherrmann@erlichlawoffice.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

SUMMARY OF THE ARGUMENT ........................................................ 1

ARGUMENT ............................................................................................ 2

    I.    THE REMEDIAL PURPOSE OF THE ADAAA DICTATES NARROW CONSTRUCTION OF THE GENDER IDENTITY DISORDER EXCLUSION ................................................................. 2

    II.    THE DIAGNOSTIC CRITERIA FOR GENDER DYSPHORIA PLACE THE CONDITION OUTSIDE THE SCOPE OF THE GENDER IDENTITY EXCLUSION ................................... 4

    III.    42 U.S.C. § 12211(b)(1) IS CONSTITUTIONALLY SUSPECT ON ITS FACE ........................................................ 7

    IV.    RULE 15(C) PERMITS RELATION BACK WHERE A COMPLAINT IS AMENDED TO NAME A DOE DEFENDANT ... 9

    V.    DEFENDANTS-APPELLEES' ACTIONS DO NOT DEMONSTRATE ANY EXERCISE OF CARE THAT WOULD PRECLUDE A CLAIM OF GROSS NEGLIGENCE AGAINST THEM UNDER VIRGINIA LAW ................................... 11

        A.    Ms. Williams' Amended Complaint States a Claim Against Sheriff Kincaid for Gross Negligence ..................................... 13

        B.    Ms. Williams' Amended Complaint States a Claim of Gross Negligence Against Deputy Garcia ......................................... 15

        C.    Ms. Williams' Amended Complaint States a Claim of Gross Negligence Against Nurse Wang............................................. 16

    VI.    THE ALLEGATIONS IN MS. WILLIAMS' AMENDED COMPLAINT ARE SUFFICIENT TO STATE AN EIGHTH AMENDMENT CLAIM OF DELIBERATE INDIFFERENCE AGAINST NURSE WANG................................................................. 17

VII.    THE ALLEGATIONS IN MS. WILLIAMS' AMENDED
        COMPLAINT ARE SUFFICIENT TO STATE AN EQUAL
        PROTECTION CLAIM AGAINST DEPUTY GARCIA ................. 19

CONCLUSION ..................................................................................... 21

CERTIFICATE OF COMPLIANCE ..................................................... 22

CERTIFICATE OF SERVICE ............................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Blatt v. Cabela's Retail, Inc.*,
2017 WL 2178123 (E.D. Pa. May 18, 2017)...................................................... 5

*Bostock v. Clayton County*,
140 S. Ct. 1731 (2020)........................................................................................ 7

*Caramillo v. Correct Care Solutions*,
2020 WL 4747786 (E.D. Va. Feb. 28, 2020) .................................................... 12

*Chaplin v Maas*,
2013 WL 1249173, *report and recommendation adopted*,
2013 WL 1249146 (W.D. Va. Mar. 26, 2013) .................................................. 12

*Doe v. Mass. Dep't of Corrections*,
2018 WL 2994403 (D. Mass. 2018) .............................................................. 5, 6

*Doe v. Triangle Doughnuts, LLC*,
472 F. Supp. 3d 115 (E.D. Pa. 2020)................................................................. 3

*Edmo v. Idaho Dep't of Corr.*,
2018 WL 2745898 (D. Idaho June 7, 2018) ...................................................... 5

*Goodman v. Praxair, Inc.*,
494 F.3d 458 (4th Cir. 2007) ....................................................................... 9, 10

*Hixson v. Hutcheson*,
2018 WL 814059 (W.D. Va. Feb. 9, 2018) ...................................................... 12

*Iglesias v. True*,
403 F. Supp. 3d 680 (S.D. Ill. 2019).................................................................. 5

*Jacobs v. N.C. Admin. Off. of the Cts.*,
780 F.3d 562 (4th Cir. 2015) ....................................................................... 2, 3

*Krupski v. Costa Crociere S. p. A.*,
    560 U.S. 538 (2010).............................................................................. 9, 10

*McKnight v. Iceberg Enterprises LLC*,
    2012 WL 2418880 (D. Md. June 26, 2012)....................................... 11

*Robinson v. Clipse*,
    602 F.3d 605 (4th Cir. 2010) ................................................................. 10

*Rumble v. 2nd Ave Value Stores*,
    442 F.Supp.3d 909 (E.D. Va. Mar. 3, 2020) ..................................... 10

*Sams v. Armor Correctional Health Services, Inc.*,
    2020 WL 5835310 (E.D. Va. Sept. 30, 2020) ................................... 13

*Tay v. Dennison*,
    2020 WL 2100761 (S.D. Ill. May 1, 2020) ......................................... 5

*United States v. Snyder*,
    611 F. App'x 770 (4th Cir. 2015) ........................................................... 8

*United States v. Streiper*,
    666 F.3d 288 (4th Cir. 2012) ................................................................... 8

*Venson v. Gregson*,
    2021 WL 673371 (S.D. Ill. 2021)........................................................... 5

*Waters v. The Geo Group, Inc.*,
    2016 WL 4373717 (E.D. Va. Aug. 10, 2016) ................................... 11

**Rules and Statutes**

42 U.S.C. § 12211(b) ................................................................................ 1

42 U.S.C. § 12211(b)(1) ...................................................................... 3, 7

ADAAA § 12102(4)(A) ............................................................................ 2

Fed.R.Civ.P. 4(m) ..................................................................................... 10

Fed.R.Civ.P.15 ....................................................................................... 10

Fed.R.Civ.P.15(c)............................................................................. 9, 10, 11

Fed.R.Civ.P.15(c)(1)(C) ..................................................................... 10

**Constitutional Amendments**

U.S. Const. amend. XIII................................................................. 12, 17

**Other Authorities**

6A Charles Alan Wright, *et al.*, Federal Practice and Procedure § 1498.3 (3d ed. 2010) ................................................................................................... 10

American Psychiatric Association, *Highlights of Changes from DSM-IV-TR to DSM 5*, https:www.psychiatry.org/File%20Library/Psyciatrists/Practice/DSM/APA_DSM_ Changes_from_DSM-IV-TR_-to_DSM-5.pdf ....................................... 5

Pub. L. No. 110-325, § 2(b)(5) (2008)..................................................... 2

WPATH, Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People (7th Version 2012)................................. 4

# SUMMARY OF ARGUMENT

With the proper application of the relation back doctrine, Ms. Williams'
Amended Complaint states facts sufficient to support her constitutional claims
against Nurse Wang and Deputy Garcia as well as her claim of gross negligence
against all Defendants-Appellees for statute of limitations purposes. The district
court erred in ruling otherwise.

The district court further erred in finding that Ms. Williams' gender
dysphoria constituted a gender identity disorder such that, absent facts
demonstrating the condition arose from a physical impairment, it is excluded from
the protections of the Americans with Disabilities Act ("ADA") pursuant to 42
U.S.C. § 12211(b). The district court's ruling that Ms. Williams must allege her
gender dysphoria resulted from a physical impairment in order to qualify for
protection under the ADA is in error. Ms. Williams pled facts in her Amended
Complaint sufficient to demonstrate she is a qualified individual with a disability.

A proper reading of the law demands that Ms. Williams be permitted to
proceed against Defendants-Appellees on all of her claims. This Court should
reverse the district court's judgment dismissing Ms. Williams' claims against
Defendants-Appellees and remand this case to proceed on all issues so triable.

## <u>ARGUMENT</u>

## I.    THE REMEDIAL PURPOSE OF THE ADAAA DICTATES NARROW CONSTRUCTION OF THE GENDER IDENTITY DISORDER EXCLUSION.

The Americans with Disabilities Act Amendments Act ("ADAAA") requires the protections of the ADA be extended "to the maximum extent permitted by the terms of the Act." ADAAA § 12102(4)(A), Pub. L. No. 110-325, § 2(b)(5) (2008). An interpretation of the gender identity disorder exclusion to the ADA which categorically excludes gender dysphoria from the protections of the Act is contrary to its remedial purpose. *See* Amicus Br., The disAbility Law Center *et al.* 4-6. As this Court previously noted, "[t]he ADA Amendments Act (ADAAA) was intended to make it easier for people with disabilities to obtain protection under the ADA." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015) (internal quotations and citations omitted).

It is not apparent from the plain text of the statute what condition or conditions "gender identity disorders" is intended to encompass, nor can any plain or obvious meaning of the term be derived from the other conditions listed within the exclusion. The text of the exclusion in question is as follows:

> Under this chapter, the term "disability" shall not include-
>
> (1) Transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders[.]

42 U.S.C. § 12211(b)(1). Defendants-Appellees claim a narrow interpretation of the exclusion would ignore the plain text of the statute, Defs.' Br. in Opp. 20-21, without regard for the intent of the statute. *See Jacobs*, 780 F.3d at 572.

While the language of the exclusion has remained unchanged since 1990, other district courts have acknowledged "the dynamic nature of the legal and medical precedent with respect to issues surrounding 'transgenderism,' 'gender identity,' and 'gender dysphoria.'" *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 134-35 (E.D. Pa. 2020). Even if the definition of "gender identity disorders" is treated as obvious, the diagnosis of gender dysphoria is relatively new and has come to be recognized only as the medical understanding of conditions unique to transgender individuals continues to evolve. The dynamism of these terms should – as at least one district court has held – present a factual question that precludes dismissal of an ADA claim based on gender dysphoria under this exclusion at the motion to dismiss stage of the proceedings. *Id.*

Congress intended to achieve broad coverage under the ADA and the amendments thereto. A proper, narrow reading of the gender identity disorder exclusion to the ADA requires a finding that Ms. Williams' gender dysphoria be deemed a disability that qualifies her for the protections of the Act.

## II. THE DIAGNOSTIC CRITERIA FOR GENDER DYSPHORIA PLACE THE CONDITION OUTSIDE THE SCOPE OF THE GENDER IDENTITY EXCLUSION.

Ms. Williams alleges her diagnosis of gender dysphoria and her long-term treatment by a medical professional in her Amended Complaint. J.A. 18 at ¶ 60. To the extent there is any question as to which diagnostic criteria apply to her condition, the WPATH Standards cited in Ms. Williams' Amended Complaint are meant to be read in conjunction with the most current, applicable diagnostic criteria. WPATH, Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People (7th Version 2012) (hereinafter "WPATH Standards of Care"), p. 6 (noting expected changes related to gender dysphoria in the newest version of the DSM and advising health professionals to "refer to the most current diagnostic criteria and appropriate codes to apply in their practice areas."). In this instance, those diagnostic criteria are found in the DSM-5.

Defendants-Appellees do not challenge the content or applicability of the diagnostic criteria found in the DSM-5 to the condition of gender dysphoria. Instead, they rely on a two-page statement put forward by the American Psychiatric Association ("APA"), the same organization that published the DSM-V, in an attempt to mischaracterize the revisions that led to the removal of gender identity disorder and inclusion of gender dysphoria in the newest version of the DSM. The two-page APA statement Defendants-Appellees rely upon appears to be

a press release issued in 2013 prior to the APA's final revisions to – and

publication of – the DSM-5. Defs.' Br. in Opp. 7-18 (citing American Psychiatric

Association, *Highlights of Changes from DSM-IV-TR to DSM 5*,

https:www.psychiatry.org/File%20Library/Psychiatrists/Practice/DSM/APA_DSM_

Changes_from_DSM-IV-TR_-to_DSM-5.pdf (hereinafter "APA Press Release")).[1]

Defendants-Appellees rely on the APA Press Release as the sole support for

their argument that "the DSM-5 does not set out a completely different condition;

gender dysphoria is merely a revision of gender identity disorder." Defs.' Br. in

Opp. 16-17. This interpretation is contrary to the condition as defined by the DSM-

5 and as understood by a growing number of district courts.[2]

---

[1] The APA Press Release summarizes then-expected changes to the DSM-V's previous diagnosis of gender identity disorder and does not reflect the formal, finalized diagnostic standards applied by medical professionals for approximately the past nine years. The Press Release is clearly not intended to be relied upon by any individual or entity for diagnostic criteria. This Court should afford no weight to the content of the APA Press Release, intended by Defendants-Appellees only to distract from the adopted and widely-accepted criteria applicable to Ms. Williams' medical condition of gender dysphoria.

[2] *See, e.g.*, *Doe v. Mass. Dep't of Corrections*, 2018 WL 2994403, at *7 (D. Mass. 2018); *see also Venson v. Gregson*, 2021 WL 673371, at *2-3 & n.2 (S.D. Ill. 2021); *Tay v. Dennison*, 2020 WL 2100761, at *3 (S.D. Ill. May 1, 2020) ("[T]he Court cannot categorically say that gender dysphoria falls within the ADA's exclusionary language and will allow the [plaintiff's ADA] claim to proceed."); *Iglesias v. True*, 403 F. Supp. 3d 680, 688 (S.D. Ill. 2019); *Edmo v. Idaho Dep't of Corr.*, 2018 WL 2745898, at *8 (D. Idaho June 7, 2018); *Blatt v. Cabela's Retail, Inc.*, 2017 WL 2178123, at *4 (E.D. Pa. May 18, 2017).

Gender dysphoria is a diagnosis separate and distinct from gender identity disorder. *See* Amicus Br., The disAbility Law Center, *et al.* 10-13; Amicus Br., GLBTQ Legal Advocates & Defenders, *et al.* 8-14 (explaining why the medical profession no longer recognizes gender identity disorder as a diagnosis). "In contrast to DSM-IV, which had defined 'gender identity disorder' as characterized by a 'strong and persistent cross-gender identification' and a 'persistent discomfort' with one's sex or 'sense of inappropriateness' in a given gender role, the diagnosis of [gender dysphoria] in DSM-V requires attendant disabling physical symptoms, in addition to manifestations of clinically significant emotional distress." *Doe v. Mass. Dep't of Corrections*, 2018 WL 2994403, at *7 (D. Mass. 2018).

Defendants-Appellees challenge Ms. Williams' reliance on the diagnostic criteria found in the DSM-V absent its incorporation by reference into her Amended Complaint. To the extent that Defendants-Appellees challenge Ms. Williams' gender dysphoria – which otherwise meets the definition of a qualified disability under the ADAAA – on the technical nature of the condition, Ms. Williams may properly rely on these criteria to refute Defendants-Appellees' argument and demonstrate she is in fact a qualified individual with a disability under the ADAAA.

The current diagnostic criteria for gender dysphoria, found in the DSM-V, demonstrate the condition is separate and distinct from gender identity disorder. For this reason, gender dysphoria should be found to fall outside of the gender identity disorder exclusion.

## III.  42 U.S.C. § 12211(b)(1) IS CONSTITUTIONALLY SUSPECT ON ITS FACE.

Defendants-Appellees contend that the gender identity disorder exclusion found in 42 U.S.C. § 12211(b)(1) is facially neutral. A reading of the gender identity disorder exclusion to the ADA to categorically exclude gender dysphoria from the protections of the Act would deny the ADA's protections to a group of people with an otherwise qualifying disability based on their transgender identity.

Pursuant to the Supreme Court's holding in *Bostock v. Clayton County*, discrimination against an individual for being transgender is discrimination "on the basis of sex." 140 S. Ct. 1731, 1741 (2020). To require every individual with gender dysphoria – a condition suffered *only* by transgender individuals – to meet an additional burden before being afforded protection under the ADA is precisely what makes the exclusion constitutionally suspect. *See* Amicus Br., GLBTQ Legal Advocates & Defenders, *et al.* 20-24.

As argued, Defendants-Appellees seek an interpretation of the gender identity exclusion that would exclude transgender individuals experiencing gender

dysphoria from the disability protections of the ADA despite having a health condition that "would otherwise qualify under the definition of a disability" or "meets the definition of disability because it limits a major life activity." Defs.' Br. in Opp. 21. The fact that a particular individual may overcome this exclusion by demonstrating their condition results from a physical impairment does not save this argument, as it would remain true that transgender individuals seeking protection under the ADAAA would effectively be held to a higher standard of pleading than non-transgender individuals.

The district court's ruling calls for an interpretation of the gender identity exclusion to the ADAAA that would render the statute constitutionally suspect and Ms. Williams has properly asked this Court to review such an interpretation as required. Defendants-Appellees provide no relevant support for their argument that this Court review Ms. Williams' constitutional challenge to the statute for plain error, citing only two criminal cases in support of this argument: *United States v. Snyder*, 611 F. App'x 770, 772 (4th Cir. 2015); and *United States v. Streiper*, 666 F.3d 288, 292 (4th Cir. 2012). Both of these cases involve an appeal from a criminal proceeding and do not address the standard of review applicable to the constitutionality of a statute on appeal of a district court's ruling on a motion to dismiss.

Defendants-Appellees' argument for the constitutionality of an exclusion applicable to all individuals with gender dysphoria absent a showing the condition resulted from a physical impairment fails for these reasons.

## IV. RULE 15(C) PERMITS RELATION BACK WHERE A COMPLAINT IS AMENDED TO NAME A DOE DEFENDANT.

Contrary to Defendants-Appellee's assertions, Rule 15(c) does not prohibit relation back of an amended pleading that names a defendant previously referred to as "John Doe." Defendants-Appellees reach this conclusion based on a flawed analysis of relation back requirements that improperly focuses on whether the need to name a new party arose due to a mistake by the plaintiff. Defs.' Br. in Opp. 26-29. Defendants-Appellees' argument misconstrues the Supreme Court's holding in *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010), as well as this Court's holding in *Goodman v. Praxair*, 494 F.3d 458 (4th Cir. 2007). Properly read and applied, Federal Rule of Civil Procedure 15(c) allows for Ms. Williams' Amended Complaint to relate back to the date of the original pleading for statute of limitations purposes.

Both the holding in *Goodman* and *Krupski* were intended to shift the focus of the relation back analysis away from what the plaintiff knew at the time of the original pleading and toward the knowledge and expectations of the defendants to be named by amendment. As one district court recently articulated this standard:

> The Fourth Circuit does not focus on the reason for a plaintiff's mistake in the original pleading, but rather reads Rule 15's "mistake" language to require that the prospective defendant must "have expected or should have expected, within the limitations period, that it was meant to be named a party in the first place."

*Rumble v. 2nd Ave Value Stores*, 442 F.Supp.3d 909, 916 (E.D. Va. Mar. 3, 2020) (citing *Robinson v. Clipse*, 602 F.3d 605, 609-10 (4th Cir. 2010); *see also Goodman v. Praxair, Inc.*, 494 F.3d 458, 471 (4th Cir. 2007) (providing "the reason why plaintiff named John Doe is immaterial to whether plaintiff's First Amended Complaint relates back to the original Complaint"); 6A Charles Alan Wright, *et al.*, Federal Practice and Procedure § 1498.3 (3d ed. 2010) (describing Rule 15 as having a "knowledge of mistake" requirement and not a "knowledge" requirement and a "mistake" requirement).

Several district courts have interpreted the guidance offered by *Krupski* and *Goodman* as permitting relation back to name a John Doe defendant where the requirements of Rule 15(c) are met. *See, e.g.*, *Rumble*, 442 F.Supp.3d at 917-18 ("To allow relation back where, as here, a plaintiff names a defendant within the Rule 4(m) service period after filing an original Complaint against John Doe is fully consistent not only with Fourth Circuit precedent, but also with the Supreme Court's analysis of relation back under Rule 15(c)(1)(C) in *Krupski v. Costa Crociere, S. p. A.*") (internal citation omitted); *McKnight v. Iceberg Enterprises*

*LLC*, 2012 WL 2418880 (D. Md. June 26, 2012) ("When an added defendant knew that he was the party the plaintiff intended to sue, the Fourth Circuit has held that the mistake requirement was satisfied.") (internal citation omitted); *Waters v. The Geo Group, Inc.* 2016 WL 4373717 (E.D. Va. Aug. 10, 2016) (granting plaintiff's motion to amend to name two new defendants and finding that "'a mistake concerning the proper party's identity' under Rule 15(c) included a plaintiff's lack of knowledge regarding the conduct or liability of that party.").

As discussed in full in Ms. Williams' Opening Brief, Deputy Garcia and Nurse Wang both expected, or should have expected, within the limitations period, that they were the parties Ms. Williams intended to name in her original Complaint. Contrary to Defendants-Appellees' argument, the fact that Ms. Williams initially referred to them as "Doe" defendants does not alter this analysis. This Court should find that relation back applies to Ms. Williams' Amended Complaint for statute of limitations purposes.

## V. DEFENDANTS-APPELLEES' ACTIONS DO NOT DEMONSTRATE ANY EXERCISE OF CARE THAT WOULD PRECLUDE A CLAIM OF GROSS NEGLIGENCE AGAINST THEM UNDER VIRGINIA LAW.

In her Opening Brief, Ms. Williams cites to a number of cases outlining the standards applicable to the claims of gross negligence and deliberate indifference under the Eighth Amendment. Defendants-Appellees fail to meaningfully oppose Ms. Williams' arguments that, pursuant to these standards, she has properly stated

a claim of gross negligence against Defendants-Appellees. Instead, Defendants-Appellees dismiss the standards cited by Ms. Williams as inapplicable because they "improperly conflate Virginia's standard for gross negligence with the Eighth Amendment standard for deliberate indifference." Defs.' Br. in Opp. 31. This assertion is at odds with precedent.

"[T]he standards for deliberate indifference and gross negligence are closely related," and, in fact, "gross negligence is a slightly lower standard, lacking the subjective component of deliberate indifference." *Caramillo v. Correct Care Solutions*, 2020 WL 4747786 at *7, (E.D. Va. Feb. 28, 2020). "The facts required to prove gross negligence are substantially similar to those required to prove deliberate indifference," such that the Virginia Supreme Court has "applied the doctrine of collateral estoppel to any prior determination of either." *Hixson v. Hutcheson*, 2018 WL 814059, at *6 (W.D. Va. Feb. 9, 2018) (quoting *Chaplin v Maas*, 2013 WL 1249173, at *9, *report and recommendation adopted*, 2013 WL 1249146 (W.D. Va. Mar. 26, 2013).

Based on the "well-settled similarities and the lower standard for showing gross negligence," at the motion to dismiss stage, it is appropriate to find that an individual who has stated a claim for deliberate indifference under the Eighth Amendment has also stated a claim for gross negligence under Virginia law. *See, e.g.*, *Sams v. Armor Correctional Health Services, Inc.*, 2020 WL 5835310 at *31

(E.D. Va. Sept. 30, 2020) (citing *Hixson*, 2018 WL 814059, at *6) ("[T]he court will assume that if [the plaintiff] has pled a cognizable deliberate indifference claim, he has also pled a cognizable gross negligence claim.").

The reason provided by Defendants-Appellees for failing to address Ms. Williams' legal arguments in support of her claim of gross negligence are without merit. Ms. Williams' Amended Complaint states claims against Sheriff Kincaid, Nurse Wang, and Deputy Garcia for deliberate indifference; as such, her Amended Complaint states claims against them for gross negligence.

### A. Ms. Williams' Amended Complaint States a Claim Against Sheriff Kincaid for Gross Negligence.

Defendants-Appellees contend that Ms. Williams cannot state a claim of gross negligence against Sheriff Kincaid because Sheriff Kincaid "enacted standards and procedures related to inmate safety." Defs.' Br. in Opp. 32. Defendants-Appellees further challenge Ms. Williams' allegations as failing to demonstrate Sheriff Kincaid's acts or omissions were the proximate cause of injury to Ms. Williams. Defs.' Br. in Opp. 33.[3]

---

[3] The district court did not make a finding regarding the proximate cause element of Ms. Williams' claims against Sheriff Kincaid, Nurse Wang, or Deputy Garcia. Instead, the court found that all three individuals exercised some degree of care such that Ms. Williams could not allege their actions rose to the level of gross negligence. J.A. 051; J.A. 059-60. Nevertheless, Defendants-Appellees now challenge Ms. Williams having pled facts sufficient to demonstrate each individual's acts were the proximate cause of Ms. Williams' injuries. As such, Ms.

For the reasons provided in Ms. Williams' Opening Brief, the existence of a standard that either (1) is not designed to protect transgender individuals or (2) is designed for the safety of transgender individuals, but is neither implemented or enforced, does not equate to the exercise of any degree of care. Sheriff Kincaid failed to design policies to protect the safety of transgender inmates and failed to enforce what policies did exist that might protect transgender inmates like Ms. Williams from the specific harm alleged. Sheriff Kincaid acted deliberately and did so despite her knowledge of the heightened risk transgender inmates face when incarcerated. Ms. Williams' Amended Complaint alleges that Sheriff Kincaid's own actions were the proximate cause of the pain and suffering, emotional and psychological distress, and violation of her dignity that she experienced. J.A. 30 at ¶ 153.

Ms. Williams' Amended Complaint alleges not only injury proximately caused by Sheriff Kincaid's actions or inactions, but also injury by deputies over whom Sheriff Kincaid holds supervisory authority, whose gross negligence she may also be held responsible for under a theory of *respondeat superior*. Sheriff Kincaid bore responsibility for supervising Nurse Wang, whose actions Ms. Williams alleges caused her unnecessary suffering, including severe anxiety,

---

Williams addresses the proximate cause element of her gross negligence claim against each Defendant-Appellee herein.

emotional distress, and psychological harm, as well as Deputy Garcia, whose actions resulted in physical injury to Ms. Williams, including bruising to her right breast. J.A. 25 at ¶ 122; J.A. 22 at ¶ 93.

Ms. Williams has sufficiently alleged that Sheriff Kincaid acted in a manner that rose to the level of gross negligence, and the facts alleged in her Amended Complaint do not support Sheriff Kincaid having exercised any degree of care toward Ms. Williams. Ms. Williams pled the injuries she suffered as a proximate cause of Sheriff Kincaid's actions and the actions of the deputies under her supervisory authority. As such, Ms. Williams has sufficiently stated a claim against Sheriff Kincaid for gross negligence.

### B. Ms. Williams' Amended Complaint States a Claim of Gross Negligence Against Deputy Garcia.

Defendants-Appellees argue that Deputy Garcia's actions – by virtue of being in line with institutional policy – are insufficient to state a claim of gross negligence against him, and that Deputy Garcia did not proximately cause any injury to Ms. Williams. Defs.' Br. in Opp. 34-36.

The institutional policy to which Defendants-Appellees rely is one which permits male deputies to search any inmate housed in the male population *if* they are uncertain as to the gender of the person they intend to search. J.A. 021 at ¶ 89. As Ms. Williams alleged, Deputy Garcia knew her to be a woman, but continued to perform a search of her person regardless. J.A. 021 at ¶ 92. His actions were not in

line with this policy. Further, Ms. Williams' allegations against Deputy Garcia indicate he purposefully misgendered her and performed an unnecessarily aggressive search of her person, resulting in injury to Ms. Williams. J.A. 021-22 at ¶¶ 90-94. Deputy Garcia's deliberate departure from institutional policy does not demonstrate he exercised any degree of care when he searched Ms. Williams.

For these reasons, and as detailed in Ms. Williams' Opening Brief, Ms. Williams has sufficiently stated a claim of gross negligence against Deputy Garcia.

### C. Ms. Williams' Amended Complaint States a Claim of Gross Negligence Against Nurse Wang.

Contrary to Defendants-Appellees' argument, Ms. Williams addressed the district court's dismissal of her gross negligence claim against Nurse Wang in her Opening Brief and set forth the issue in her Statement of the Issues. Pl.'s Br. at 5, ¶ 3. Ms. Williams has not waived this argument and maintains – for the reasons set forth in her Opening Brief – that she has alleged facts sufficient to state a claim of gross negligence against Nurse Wang.

Ms. Williams does not seek to hold Nurse Wang liable for any other medical provider's actions, as Defendants-Appellees contend. Defs.' Br. in Opp. 38-39. Although Ms. Williams' Amended Complaint does contain mention of two other medical professionals having interacted with Ms. Williams, her claim of gross negligence against Nurse Wang rests solely on those allegations that relate to Nurse Wang's own actions.

Nurse Wang discontinued Ms. Williams' ongoing hormone treatment in November 2018 and failed to restart her treatment for nearly a month. J.A. 016-18 at ¶¶ 46-66. Nurse Wang waited nearly a month to order Ms. Williams' hormone medication and evaluate her medical need for a bra. J.A. 018-19 at ¶¶ 64, 71. Despite finding both Ms. Williams' hormone treatment and the provision of a bra to be medically necessary, Nurse Wang permitted an extended lapse in Ms. Williams' treatment and failed to obtain a bra of appropriate size for Ms. Williams at any point during her incarceration. J.A. 019 at ¶ 75; J.A. 024 at ¶¶ 111-114. Ms. Williams suffered an exacerbation of her symptoms of gender dysphoria because of Nurse Wang's actions and failure to act. J.A. 017-18 at ¶¶ 54-57, 65.

Nurse Wang did not exercise care toward Ms. Williams. Ms. Williams has alleged actions by Nurse Wang that rise to the level of gross negligence and which proximately caused the injuries alleged in Ms. Williams' Amended Complaint. Ms. Williams has sufficiently stated a claim of gross negligence against Nurse Wang.

## VI. THE ALLEGATIONS IN MS. WILLIAMS' AMENDED COMPLAINT ARE SUFFICIENT TO STATE AN EIGHTH AMENDMENT CLAIM OF DELIBERATE INDIFFERENCE AGAINST NURSE WANG.

Defendants-Appellees challenge Ms. Williams' claim of deliberate indifference against Nurse Wang based on the gravity of the injury suffered by Ms. Williams as a result of Nurse Wang's actions. Defs.' Br. in Opp. 46-52. In so doing, Defendants-Appellees fail to construe the facts alleged in Ms. Williams'

Amended Complaint in the light most favorable to her as required at this stage of litigation.

Defendants-Appellees improperly conclude from the allegations in Ms. Williams' Amended Complaint that she could not have experienced any harm before she lodged a formal complaint two weeks into her incarceration. Defs.' Br. in Opp. 50. This assumption does not logically follow from the facts Ms. Williams alleged and is contrary to a reading of the facts in the light most favorable to Ms. Williams.

During the two weeks preceding her formal complaint, Ms. Williams believed Nurse Wang to be working to fulfill Ms. Williams' needs. Ms. Williams relied upon the representations made to her by Nurse Wang during her initial medical evaluation. Nurse Wang instructed Ms. Williams to purchase a bra from the commissary rather than evaluating her for her medical need for the item, and Ms. Williams had no reason to believe she could secure a bra by further complaint to medical staff, as she had already spoken to Nurse Wang. J.A. 016 at ¶ 45. Ms. Williams fully informed Nurse Wang of her need for medication and had taken the preliminary steps she believed were required to begin her treatment while incarcerated. J.A. 016 at ¶¶ 46-49; J.A. 017 at ¶¶ 51-52. Nurse Wang's response to Ms. Williams' first complaint only confirmed her suspicions: Ms. Williams was instructed she had no choice but to continue to wait. Ms. Williams' reliance on

Nurse Wang's own promises and representations to her regarding her medical treatment and need for accommodations explains Ms. Williams' initial delay in complaining, and the gravity of the injury alleged by Ms. Williams is otherwise apparent and adequately alleged in her Amended Complaint.

For the reasons set out in full in her Opening Brief, Ms. Williams has pled facts in her Amended Complaint sufficient to support her claim of deliberate indifference to medical needs in violation of the Eighth Amendment against Nurse Wang.

## VII. THE ALLEGATIONS IN MS. WILLIAMS' AMENDED COMPLAINT ARE SUFFICIENT TO STATE AN EQUAL PROTECTION CLAIM AGAINST DEPUTY GARCIA.

Defendants-Appellees challenge Ms. Williams' claim of intentional discrimination by Deputy Garcia and argue that his actions were legitimately related to a penological interest such that her Equal Protection claim against him cannot proceed. Defs.' Br. in Opp. 40-46.

Deputy Garcia's intent to discriminate against Ms. Williams based on her status as a transgender person is apparent from his decision to perform a cross-gender search of Ms. Williams despite knowing Ms. Williams to be a woman. J.A. 021 ¶ 92. Deputy Garcia's actions were contrary to institutional policy which permits him to search any inmate housed in the male population *only* if they are uncertain as to the gender of the person they intend to search. J.A. 021 at ¶ 89.

Deputy Garcia's purposeful misgendering of Ms. Williams and the aggressive manner in which he conducted his search were also demonstrative of his discriminatory animus toward Ms. Williams and contrary to policy. J.A. 018 at ¶ 64; J.A. 021-22 at ¶¶ 90-94. Deputy Garcia did not simply perform a search of Ms. Williams "in the same manner as it would have been performed for other inmates with whom Ms. Williams was housed." Defs.' Br. in Opp. 50.

Throughout their brief, as here, Defendants-Appellees construe the facts alleged in Ms. Williams' Amended Complaint in a manner inconsistent with that required at this stage of the litigation. Defendants-Appellees' speculation as to why Ms. Williams was not searched by a female deputy present at the time - because the female deputy "was not comfortable with performing the search as requested" - is not supported by any of the facts alleged by Ms. Williams and should be disregarded. Defs.' Br. in Opp. 46. Defendants-Appellees may not rely on this strained inference to conclude that no alternative to Deputy Garcia's search of Ms. Williams existed.

For the reasons set out in full in her Opening Brief, Ms. Williams has pled facts in her Amended Complaint sufficient to support her Equal Protection claim against Deputy Garcia.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant respectfully requests this

Court reverse the district court's judgment dismissing her claims against

Defendants-Appellees and remand this case to proceed on all issues so triable.

Respectfully Submitted,

/s/ *Katherine L. Herrmann*
Joshua Erlich (VSB No. 81298)
Davia Craumer (VSB No. 87426)
Katherine L. Herrmann (VSB No. 83203)
THE ERLICH LAW OFFICE, PLLC
2111 Wilson Blvd. Suite 700
Arlington, VA 22201
Tel: (703) 791-9087
Fax: (703) 722-8114
Email: jerlich@erlichlawoffice.com
      dcraumer@erlichlawoffice.com
      kherrmann@erlichlawoffice.com

## CERTIFICATE OF COMPLIANCE

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[X] this brief or other document contains 4,620 words

[ ] this brief uses monospaced type and contains [state number of] lines

This brief or other document complies with the typeface and type style requirements because:

[X] this brief or other document has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font; or

[ ] this brief or other document has been prepared in monospaced typeface using [identify word processing program] in [identify font size and type style].

/s/ *Katherine L. Herrmann*
Katherine L. Herrmann

Party Name: Plaintiff-Appellant Kesha T. Williams

Dated: January 19, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2022, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.


/s/ *Katherine L. Herrmann*
Katherine L. Herrmann

*Counsel for Plaintiff-Appellant*