No. 21-2030

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

KESHA T. WILLIAMS

*Plaintiff – Appellant*

v.

STACEY A. KINCAID, et al.

*Defendants-Appellees.*

_____

**On Appeal from the United States District Court
for the Eastern District of Virginia
(Case No. 1:20-01397, Hon. Claude Hilton)**

_____

## RESPONSE TO DEFENDANTS' PETITION FOR REHEARING *EN BANC*

Joshua Erlich (VSB No. 81298)
Katherine L. Herrmann (VSB No. 83203)
THE ERLICH LAW OFFICE, PLLC
2111 Wilson Blvd. Suite 700
Arlington, VA 22201
Tel: (703) 791-9087
Fax: (703) 722-8114
Email: jerlich@erlichlawoffice.com
 kherrmann@erlichlawoffice.com

Adam G. Unikowsky
JENNER & BLOCK LLP
1099 New York Ave., NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
aunikowsky@jenner.com

*Counsel for Plaintiff-Appellant*

1

## **Table of Contents**

Table of Authorities........................................................................3

**INTRODUCTION** ........................................................................**5**

**ARGUMENT** ........................................................................**6**

**I.  The panel's holding is consistent with well-established precedent.**..........**6**

A. The panel correctly concluded that Williams adequately alleged a disability that was within the ADA and not captured by the exception for "gender identity disorders." ...............................................................7

B. The panel correctly concluded that Williams adequately alleged a disability resulting from a "physical impairment." ...............................12

**II. En banc review is unwarranted.** ..................................................**16**

**CONCLUSION**..........................................................................**19**

**Certificate of Compliance** ..........................................................**20**

2

## **Table of Authorities**

**Cases**

*Bostock v. Clayton County*, 140 S. Ct. 1731 (2020)................................................4, 8

*FTC v. Morton Salt Co.*, 334 U.S. 37 (1948). ........................................................14

*Goodman v. Praxair, Inc.*, 494 F.3d 458 (4th Cir. 2007) (en banc).......................14

*Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020)...............7, 10, 12

Javierre v. Central Altagracia, 217 U.S. 502 (1910). ..............................................14

Meacham v. Knolls Atomic Power Lab., 554 U.S. 84 (2008) ................................14

*Van Buren v. United States*, 141 S. Ct. 1648 (2021) ..........................................9, 10

**Statutes**

Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*........................... *passim*

42 U.S.C. § 12211(b)................................................................................4, 6, 9, 12

**Other Authorities**

135 Cong. Rec. S10785-86, 1989 WL 183216 ......................................................10

135 Cong. Rec. S11173-78, 1989 WL 183785 ......................................................10

A. Scalia & B. Garner, Reading Law:

    The Interpretation of Legal Texts 73 (2012))........................................................9

Am. Psych. Ass'n, Diagnostic and Statistical Manual 71 (3d ed., rev. 1987) (DSM-

    III-R)). ...........................................................................................................9, 10

**Rules**

Fed. R. App. P. 35(b)(1)(A) ...........................................................................4, 5, 16

Fed. R. App. P. 35(b)(1)(B) .....................................................................................5

## INTRODUCTION

The Americans with Disabilities Act provides that "the term 'disability' shall not include … gender identity disorders not resulting from physical impairments." 42 U.S.C. § 12211(b). The panel concluded, on two independently sufficient grounds, that Plaintiff Kesha Williams adequately pleaded a "disability" that was not subject to that exemption. First, the panel held that Williams adequately pleaded that she suffered from gender dysphoria, a distinct condition from "gender identity disorders." Second, the panel held that even if Williams suffered from a "gender identity disorder," she adequately pleaded her gender dysphoria resulted from "physical impairments."

Neither holding satisfies the criteria for en banc review. First, the panel's decision does not "conflict[] with a decision of the United States Supreme Court" or of any decision of the Fourth Circuit. Fed. R. App. P. 35(b)(1)(A). To the contrary, the panel applied ordinary principles of statutory construction to resolve the question before it, even citing the Supreme Court case Defendants insist it ignored (*Bostock*). Second, the panel's decision does not involve any question of "exceptional importance." Fed. R. App. P. 35(b)(1)(B). Instead, the panel held that the specific factual allegations in Williams' complaint sufficed to state a claim under the ADA, denied Defendants' motion to dismiss, and allowed the litigation to proceed.

Rather than attempting to show that Rule 35's criteria are satisfied, Defendants argue that the panel decision is wrong on the merits. Disagreement with a panel decision is an insufficient basis for en banc review. But in any event, the panel got it right. Applying the plain text of the ADA to the allegations in Williams' complaint, the panel correctly concluded that Williams stated a claim based on a disability that fell outside of the ADA's "gender identity disorders" exclusion—which is all that is required at the motion to dismiss stage.

Finally, this case would be a poor vehicle for en banc review. The factual and legal record is sparse, and Defendants waived key arguments by failing to raise them at the panel stage. If the Court is to undertake the substantial expenditure of judicial resources necessitated by en banc review, it should await a case with a better developed record.

## ARGUMENT

### I.    The panel's holding is consistent with well-established precedent.

Defendants devote their en banc petition to arguing that the panel decision is wrong. Contrary to Defendants' contention, however, the panel applied well-settled principles of statutory construction and its decision is fully consistent with Supreme Court and circuit precedent. Defendants' critiques of the panel's decision are not persuasive.

6

A. <u>The panel correctly concluded that Williams adequately alleged a disability that was within the ADA and not captured by the exception for "gender identity disorders."</u>

Williams' complaint alleges that she suffers from gender dysphoria. The ADA provides that "transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders" are not disabilities. 42 U.S.C. § 12211(b). Defendants do not dispute that, in the absence of that exception, gender dysphoria would be a disability under the ADA. Instead, Defendants contend that gender dysphoria cannot be a disability because it qualifies as a "gender identity disorder" under § 12211(b).

As the panel correctly concluded, Defendants' argument conflicts with the plain text of the ADA. The ADA excludes "gender identity disorders," not gender dysphoria.

Gender dysphoria differs from "gender identity disorder." As its name suggests, [t]he "now obsolete" diagnosis of gender identity disorder "focused solely on cross-gender identification"; its "essential feature" was "an incongruence between assigned sex . . . and gender identity." Op. at 10, 13. As this Court explained in *Grimm*, "[B]eing transgender was pathologized for many years. As recently as the DSM-III and DSM-IV, one could receive a diagnosis of "transsexualism" or "gender

identity disorder," "indicat[ing] that the clinical problem was the discordant gender identity." *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 611 (4th Cir. 2020).

The "modern" diagnosis of gender dysphoria, by contrast, "concerns itself primarily with *distress* and other disabling symptoms, rather than simply being transgender." Op. at 12. "The DSM-5 itself emphasizes this distinction, explaining that the gender dysphoria diagnosis 'focuses on dysphoria as the clinical problem, not identity per se.'" Op. at 13.

In view of Congress' mandate that "courts . . . construe the amended [ADA] as broadly as possible" and the "generosity with which complaints are to be reviewed," the panel correctly held that the "difference between 'gender identity disorders' and gender dysphoria" was sufficient to "nudge Williams' claims … across the line from conceivable to plausible." Op. at 14-15 (alterations and quotation marks omitted). It is Defendants' argument that this Court should ignore the obvious differences between "gender identity disorder," a diagnosis that no longer exists," and "gender dysphoria" a new and different condition that is a new and novel approach to statutory interpretation, not Plaintiff's.

Defendants' disagreements with the panel's holding are not persuasive either as a basis for granting en banc review or on the merits. Defendants reason that "[w]hile the diagnosis and treatment has evolved to focus on the clinical problem, that problem still involves, at its base, an incongruence with gender identity. As a

8

result, gender dysphoria falls within the gender identity disorder as that phrase was understood when the ADA was enacted." Pet. at 5. Defendants also emphasize that gender dysphoria is *related* to the "gender identity disorders" referred to in the ADA. They argue, for instance, that "gender dysphoria falls under the gender identity disorder *umbrella*" and that "gender dysphoria … *involves* gender identity" or "*is connected to* . . . 'gender identity disorders.'" Pet. at 7 (emphases added).

These arguments ignore the ADA's plain text and the panel's straightforward application of well-established methods of statutory interpretation. Op. at 9 ("[I]n 1990, "the time of the statute's adoption,' gender identity disorders did not include gender dysphoria.") (quoting *Bostock v. Clayton County*, 140 S. Ct. 1731, 1738 (2020)). While there may be a relationship between the "now-rejected" diagnosis of gender identity disorder and the current diagnosis of gender dysphoria (both involve conditions that manifest as a result of having a gender identity that is different than a person's assigned birth sex), they are not the same. "Equating the two is like equating the now-obsolete diagnosis of hysteria with the modern diagnosis of general anxiety disorder simply because they share a common diagnostic criterium." Op. at 14, n. 5. As discussed above, the diagnostic criteria for gender dysphoria reject the foundational idea upon which the diagnosis of gender identity disorder was premised – that is, that the presenting feature of the condition was a "disordered" identity.

To press their claim, Defendants point out that "not all the terms in § 12211 are in the DSM-III-R diagnoses." Pet. at 5. For example, § 12211 exempts "transvestism," and that term is not in the DSM-III-R. *Id.* (referring to Am. Psych. Ass'n, Diagnostic and Statistical Manual 71 (3d ed., rev. 1987) (DSM-III-R)). Defendants contend that under the panel's reasoning, those terms would be "meaningless." Pet. at 6.

Defendants misunderstand the panel's reasoning. The panel did not hold that any term listed among the exclusions is a nullity if it does not have a correlative listing in the DSM. Instead, the panel held that because the statutory term "gender identity disorder" matched the name of a disorder listed in the DSM-III-R, that term should be construed to refer to the disorder listed in the DSM-III-R and where it is now obsolete, the exclusion no longer holds. This holding reflects the basic tenet of statutory construction that when "interpreting statutes, courts take note of terms that carry 'technical meaning[s].'" *Van Buren v. United States*, 141 S. Ct. 1648, 1657 (2021) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 73 (2012)). Courts must determine "the way that an 'appropriately informed' speaker of the language would understand the meaning" of a statutory phrase. *Id*. As of 1990, an appropriately informed speaker of English would have understood the phrase "gender identity disorder" to be a reference to its technical meaning, as stated in the DSM-III-R.

The panel's reliance on the DSM-III-R to interpret the meaning of "gender identity disorders" is undoubtedly correct, as evidenced by the statements of Sen. William Armstrong, who co-sponsored the amendment to exclude "gender identity disorders." 135 Cong. Rec. S10785-86, 1989 WL 183216. To provide "the history of, and necessity for, that amendment," Armstrong entered into the congressional record a six-page statement that repeatedly references "the latest version of the Manual[,] . . . the revised third edition published in 1987 and known as DSM-III-R" no less than twelve times, and includes "[t]he complete list of DSM-III-R classification categories and codes" as an "attach[ment] to this statement." 135 Cong. Rec. S11173-78, 1989 WL 183785.

Principles of constitutional avoidance further support the panel's analysis. As the panel explained, the only reason for categorically exempting both "gender identity disorders" and "gender dysphoria," despite their important differences, from the protection of the ADA would be "a bare . . . desire to harm a politically unpopular group[, which] cannot constitute a legitimate governmental interest." Op. at 23; *see also id*. at 22 (citing *Grimm* for proposition that "the ADA's exclusion of gender identity disorders [was] *itself* . . . evidence of such discriminatory animus"). Accordingly, the panel correctly "stop[ped] short of deciding this case on constitutional grounds" and interpreted the ADA's exclusion narrowly to avoid the constitutional issue raised by a broad and nontextual reading. While Defendants are

correct that the constitutional avoidance canon applies only when a statute is ambiguous, Pet. at 5, n.1, here the statute either unambiguously excludes gender dysphoria or, admits of an interpretation allowing the term "gender identity disorders" to include "gender dysphoria" a position with which Plaintiff (and the Panel) disagree. To the extent the Court were to find an ambiguity, despite its textual clarity, it would be one which introduces a potential competing interpretation of the ADA that results in an exclusion for any transgender person who brings a claim based on a medical condition associated with their being transgender. That creates a constitutional problem. As an alternative to its primary holding, the panel properly applied the constitutional avoidance canon and concluded that the phrase "gender identity disorders" should be construed according to its literal terms, as opposed to being expanded to cover gender dysphoria, a new and distinct condition.

### B. The panel correctly concluded that Williams adequately alleged a disability resulting from a "physical impairment."

The panel decision is correct for an independent reason as well. The ADA does not exempt all "gender identity disorders." Instead, it exempts only "gender identity disorders not resulting from physical impairments." 42 U.S.C. § 12211(b). As an independent basis for reversing the district court's dismissal, in reliance on "the broad scope of the ADA and the implementing regulations," the panel correctly

12

concluded that Williams stated a claim that her disability resulted from a "physical impairment" thereby falling outside of the exclusion.

The panel reached that conclusion on two grounds. Op. at 16. First, the panel pointed to Williams' allegation that she had received hormone treatment—a "physical transition treatment". Op. at 17 (quoting *Grimm*). When this treatment was withheld, she experienced "emotional, psychological, and *physical* distress." *Id.* As the panel rightly held, "the need for hormone therapy may well indicate that her gender dysphoria has some physical basis." *Id*. In other words, the fact that without medical treatment the Plaintiff experiences physical distress supports the claim that her condition results from a physical source or "impairment".

Second, the panel explained that "Williams points to medical and scientific research identifying possible physical bases of gender dysphoria." Op. at 18. This research, together with the reasoning of the U.S. Department of Justice, "renders the inference that gender dysphoria has a physical basis sufficiently plausible to survive a motion to dismiss." *Id*.

As the panel explained, courts "lack sufficient expertise in physiology, etiology, psychiatry and other potentially relevant disciplines to determine the cause or causes of gender dysphoria." Op. at 19 (quotation marks omitted). To dismiss a case at the motion to dismiss stage, with no factual record, would be "premature and speculative." *Id*. (quotation marks omitted).

Defendants' contrary arguments have shifted since the panel stage. At the panel stage, Defendants' argument "boil[ed] down to asserting that Williams should have inserted the words 'from a physical basis' into her complaint." Op. at 18. Indeed, Defendants' counsel conceded at oral argument that if the complaint had expressly pleaded that gender dysphoria was the result of a physical impairment, then the case could proceed. *Id*. The panel correctly rejected that argument, pointing out that courts had long eschewed imposing magic-words pleading rules in which litigants must parrot the words of a statute in order to withstand dismissal. *Id*.

Defendants' magic-words arguments lacks merit for an additional reason: Defendants are invoking an affirmative defense, on which Defendants bear the burden of proof. The Supreme Court has long recognized the "familiar principle that '[w]hen a proviso … carves an exception out of the body of a statute or contract[,] those who set up such exception must prove it.'" *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91 (2008) (quoting *Javierre v. Central Altagracia*, 217 U.S. 502, 508 (1910)). "'[T]he burden of proving justification or exemption under a special exception to the terms of a statute generally rests on one who claims its benefits." *Id*. (quoting *FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948)). "That longstanding convention is part of the backdrop against which the Congress writes laws," and courts "respect it unless [they] have compelling reasons to think that Congress meant to put the burden of persuasion on the other side." *Id*. at 91-92. Here, Defendants

14

invoke a special exception to the ADA's definition of a disability for "gender identity disorders not resulting from a physical impairment"; they therefore bear the burden of proving that the exception is satisfied. Affirmative defenses may be resolved at the motion to dismiss stage only in the "relatively rare circumstances" where "all facts necessary to the affirmative defense clearly appear *on the face of the complaint*." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (emphasis in original; alterations, quotation marks and citation omitted). Here, to invoke this affirmative defense that Plaintiff's condition is excluded from the ADA, Defendants would have to demonstrate that the facts alleged clearly show Plaintiff's condition does *not* result from a physical impairment. That standard does not come close to being satisfied here.

In their en banc petition, Defendants make a new argument. They claim that the panel held that Williams' "allegations describe the symptoms or manifestations of gender dysphoria." Pet. at 9. Defendants claim that Williams must plead a "separate physical impairment causing the gender dysphoria." *Id*.

Defendants misconstrue the panel's reasoning. The panel held that Williams *did* plead a "separate physical impairment causing the gender dysphoria." Pet. at 9. In its first holding, the panel concluded that Williams' allegation that depriving her of hormones caused her to experience physical harm constituted evidence that her gender dysphoria is related to a physical impairment. Thus, Williams did not allege

that the symptoms of gender dysphoria were the physical impairment; instead, she alleged that the *medical* effects of withdrawing medication demonstrate that her body needed the medical intervention to function property. In other words, her endocrine system does not function properly without the medication she needs to treat her gender dysphoria. Op. at 17 ("[T]he need for hormone therapy may well indicate that her gender dysphoria has some physical basis."). In its second holding, the panel pointed to medical and scientific research showing that gender dysphoria may have an underlying physical etiology that is a "physical impairment." Op. at 18. Neither holding suggests that the "physical impairment" requirement can only be satisfied by pointing to the physical characteristics that do not match the plaintiff's gender identity.

## II.     En banc review is unwarranted.

In addition to the panel decision being correct, several other features of this case make it a poor candidate for en banc review.

First, Defendants fail to explain how this case meets Rule 35's criteria for en banc review. Defendants do not contend that the panel decision conflicts with any case law from the Supreme Court, this Court, or any other court. To the contrary, they claim that the issue "is of exceptional importance because it is the first appellate court to address this issue." Pet. at 10. However, that is a reason for *denying* en banc

review, not for granting it. If the issue is as important as Defendants claim, it is likely to arise again, both here and elsewhere. If the en banc Court has interest in the issues in this case, it would benefit from awaiting the perspectives of other appellate courts before expending the resources of en banc review.

Defendants also claim that the panel decision "is of exceptional importance as it renders a medical determination without the benefit of medical experts." Pet. at 1. That argument disregards the procedural posture of this case, which was decided on a motion to dismiss. At this stage, the panel's holding was merely that plaintiff had sufficiently alleged that her gender dysphoria is distinct from gender identity disorder and, in any case, would not be encompassed in the exclusion for gender identity disorders because she sufficiently alleged her gender dysphoria results from a physical impairment. Defendants may contest those allegations as the case proceeds, but on a motion to dismiss, the court must accept them as true.

Accordingly, it is *Defendants* who ask the Court to render a medical determination without the benefit of medical experts. Defendants ask the Court to hold, based on the pleadings alone and as a matter of law, that, as a matter of medical fact, Williams' gender dysphoria is a "gender identity disorder not resulting from a physical impairment." By contrast, the panel concluded that Williams pleaded sufficient facts for this case to proceed to discovery. That holding does not satisfy the "exceptional importance" criterion.

Second, en banc review will be complicated by a likely dispute over argument preservation. At the panel stage, Defendants barely offered any response to Williams' argument that gender dysphoria differed from "gender identity disorders." The panel observed that "[a]rguably," Defendants' "'passing shot' amounts to waiver." Op. at 13, n.4. Likewise, Defendants' legal argument that the "physical impairment" requirement inherently cannot be satisfied by plaintiffs alleging gender dysphoria is newly presented at the en banc stage and presents a potential waiver issue. At the panel stage, the panel noted that Defendants' argument boiled down to a dispute over the clarity of Williams' pleading. Op. at 16. If the Court grants rehearing en banc, disputes over argument preservation may arise, leading to unnecessary procedural complexity.

Third, even if Defendants preserved their argument, the sparse legal and factual record would hinder the Court's review. Defendants apparently ask the en banc Court to issue a far-reaching ruling that gender dysphoria is *always*, as a matter of law, equivalent to "gender identity disorder not resulting from physical impairments." Indeed, because the "gender identity disorders" exclusion is an affirmative defense, Defendants ask the en banc Court to rule that Williams has pleaded herself out of court and established an exclusion on which *Defendants* bear the burden of proof. The factual and legal record are woefully insufficient to make such a determination. Time and discovery will allow for the development of a fuller

record including evidence on Williams' symptoms and testimony, if necessary, on the physical origins of Williams' condition. The Court should not take the extraordinary step of granting rehearing en banc with such limited information in the record.

Fourth, if this case proceeds, it may well be decided on case-specific grounds. For example, Williams could submit evidence regarding the effects of depriving her of hormones, which would clarify whether her symptoms arise from a "physical impairment." If the factual record shows that removing hormones from Williams demonstrates a "physical impairment" within the meaning of the ADA, then this case may be resolved on case-specific grounds that would moot any broader questions over the relationship between gender dysphoria and "gender identity disorders." Allowing the parties to develop a factual record—and allowing the case to be decided based on those facts—is preferable to issuing a sweeping ruling foreclosing all relief on the basis of the pleadings.

For all these reasons, en banc review is unwarranted.

## CONCLUSION

The petition for rehearing en banc should be denied.

### Certificate of Compliance

1.  This response to Defendants' petition complies with the type-volume limits set forth in this Court's Request for a Response (Dkt. 73) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, etc.) this petition contains [3,414] words.

2.  This response to Defendants' petition complies with the typeface and type style requirements because it has been prepared in proportionally spaced typeface using 14-point Times New Roman.


Dated: September 19, 2022                    /s/ Katherine L. Herrmann
                                             *Counsel for Plaintiff-Appellant*

## **Certificate of Filing and Service**

I hereby certify that on this 19th day of September, 2022, I caused this Response to Defendants' Petition for Rehearing *En Banc* to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

/s/ Katherine Herrmann
*Counsel for Plaintiff-Appellant*