FILED: October 7, 2022

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-2030
(1:20-cv-01397-CMH-TCB)

KESHA T. WILLIAMS

        Plaintiff – Appellant,

v.

STACEY A. KINCAID, in her official capacity; XIN WANG, NP, in her individual and official capacities; DEPUTY GARCIA, in his individual and official capacities

        Defendants – Appellees,

------------------------------

AMERICAN CIVIL LIBERTIES UNION; BLACK AND PINK MASSACHUSETTS; GLBTQ LEGAL ADVOCATES & DEFENDERS; LAMBDA LEGAL; NATIONAL CENTER FOR LESBIAN RIGHTS; NATIONAL CENTER FOR TRANSGENDER EQUALITY; NATIONAL LGBTQ TASK FORCE; TRANS PEOPLE OF COLOR COALITION; TRANSCENDING BARRIERS (ATL); TRANSGENDER LEGAL DEFENSE & EDUCATION FUND; DISABILITY LAW CENTER OF VIRGINIA; DISABILITY RIGHTS VERMONT

        Amici Supporting Appellant.

O R D E R

The court denies appellees' petition for rehearing en banc.

A requested poll of the court failed to produce a majority of judges in regular active service and not disqualified who voted in favor of rehearing en banc. Chief Judge Gregory, Judge Motz, Judge King, Judge Wynn, Judge Diaz, Judge Thacker, Judge Harris, and Judge Heytens voted to deny rehearing en banc. Judge Wilkinson, Judge Niemeyer, Judge Agee, Judge Richardson, Judge Quattlebaum, and Judge Rushing voted to grant rehearing en banc.

Judge Wynn wrote an opinion concurring in the denial of rehearing en banc.

Judge Quattlebaum wrote an opinion dissenting from the denial of rehearing en banc, in which Judges Wilkinson, Niemeyer, Agee, Richardson, and Rushing joined.

Entered at the direction of Judge Motz.

For the Court

/s/ Patricia S. Connor, Clerk

WYNN, Circuit Judge, concurring in the denial of rehearing en banc:

I concur in the majority of the Court's decision not to rehear this case en banc. But because six of our colleagues have opted to join an advisory opinion focused on dissenting from this Court's decision on the merits,[1] I write to briefly highlight the panel majority's opposing viewpoint. I urge the reader to review the whole of the panel majority's thoughtful, thorough, and correct examination of the issue. *See Williams v. Kincaid*, 45 F.4th 759, 763 (4th Cir. 2022).

Plaintiff Kesha Williams—a transgender woman with gender dysphoria who spent six months incarcerated in the Fairfax County Adult Detention Center—filed a § 1983 action against the Sheriff of Fairfax County, a prison deputy, and a prison nurse alleging violations of the Americans with Disabilities Act ("ADA"), among other claims. She alleges that Defendants' actions while she was incarcerated—including placing her in male inmates' housing, denying her prescribed hormone medication for a period of time, subjecting her to harassment, and refusing to provide a female deputy to conduct a body search—violated the ADA.

The district court dismissed the case, concluding that gender dysphoria is not a disability as defined by the ADA. Notably, the ADA excludes "transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, *gender identity disorders not resulting from physical impairments*, or other sexual behavior disorders" from the

---

[1] *See Doe v. Fairfax Cnty. Sch. Bd.*, 10 F.4th 406–09 (4th Cir. 2021) (Wynn, J., concurring in the denial of rehearing en banc) (discussing the practice of filing advisory opinions attached to denials of rehearing en banc).

3

definition of "disability." 42 U.S.C. § 12211(b)(1) (emphasis added). At the same time, however, Congress has mandated that "[t]he definition of disability in [the ADA] *shall be construed in favor of broad coverage* of individuals under [the ADA], *to the maximum extent permitted* by the terms of [the statute]." *Id.* § 12102(4)(A) (emphases added).

On appeal, the panel majority reversed and remanded for further proceedings after concluding that Williams' complaint raised sufficient allegations "to 'nudge [her] claims' that gender dysphoria falls entirely outside of § 12211(b)'s exclusion for 'gender identity disorders' 'across the line from conceivable to plausible.'" *Williams*, 45 F.4th at 769 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In reaching this conclusion, the panel majority—in contrast to what the dissent from denial of rehearing en banc asserts—looked to the meaning of "gender identity disorders" at the time of the ADA's enactment in 1990. *Id.* at 766–67. The majority determined that "gender identity disorders" in 1990 meant something *similar* in some ways to "gender dysphoria"—but the definitions were not the same. Rather, "gender identity disorders" in 1990 were defined by "an incongruence between assigned sex (i.e., the sex that is recorded on the birth certificate) and gender identity." *Id.* at 767 (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 71 (3d ed., rev. 1987)).

By contrast, "gender dysphoria" does not "focus[] exclusively on a person's gender identity" or the "incongruence between their gender identity and their assigned sex." *Id.* Rather, gender dysphoria refers specifically to "the '*clinically significant distress*' felt by *some of those* who experience" that incongruence. *Id.* (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 453 (5th ed. 2013)) (second

4

emphasis added); *see also id.* at 769 (explaining that "gender identity disorder" "focused solely on cross-gender identification," while "gender dysphoria" focuses "on clinically significant distress").

This is not just "linguistic drift." Dissent from Denial of Rehearing En Banc at 8. Gender dysphoria is a diagnosable condition whose definition is much narrower than, and separate from, the definition of "gender identity disorders" in 1990. Put simply, Williams's diagnosis was neither named in nor covered by the ADA's exclusion. "We cannot add to the ADA's list of exclusions when Congress has not chosen to do so itself." *Williams*, 45 F.4th at 770.

And the majority did not stop there. Recall that the ADA's exclusion applies only to "gender identity disorders *not resulting from physical impairments*." 42 U.S.C. § 12211(b)(1) (emphasis added). The majority held that, even if gender dysphoria *is* a "gender identity disorder," Williams sufficiently alleged that her gender dysphoria resulted "from physical impairments" and so would not fall within the statutory exclusion. *Williams*, 45 F.4th at 770–72. Specifically, Williams alleged that her gender dysphoria required hormone therapy "to effectively manage and alleviate" it, such that when she went without treatment, she experienced "emotional, psychological, and *physical* distress." *Id.* at 770–71 (quoting Am. Compl. ¶¶ 14, 123).

Finally, the majority pointed to constitutional avoidance principles to support its interpretation of the ADA. *Id.* at 772–74. Because laws that discriminate against transgender people are subject to intermediate scrutiny, and because "[o]ne need not look too closely to find evidence of discriminatory animus toward transgender people in the

5

enactment of § 12211(b)," constitutional avoidance principles supported "reject[ing] a reading of § 12211(b) that would exclude gender dysphoria from the ADA's protections." *Id.* at 772–73.

In sum, the majority did not "judicially modif[y]" the ADA "[w]ith the stroke of a pen." Dissent from Denial of Rehearing En Banc at 7. Instead, it faithfully applied Congress's mandate to construe the ADA broadly, and thus its exclusions narrowly. In interpreting the exclusion from coverage, the majority did not simply rely on changing definitions or societal norms; it looked to what Congress had meant by the exclusion in 1990 and concluded that Williams's diagnosis did not fall within that meaning.

My friends in dissent rightly recognize that "[a]ll individuals, including those with gender dysphoria, deserve to be treated with dignity, respect and kindness." *Id.* at 8. Indeed, that is the purpose for which Congress enacted the ADA. *See* 42 U.S.C. § 12101. The panel majority properly upheld that purpose by, as Congress instructed, construing coverage under the ADA broadly.

I concur in the denial of rehearing this case en banc.

QUATTLEBAUM, Circuit Judge, with whom Judges WILKINSON, NIEMEYER, AGEE, RICHARDSON, and RUSHING join, dissenting:

With the stroke of a pen, we have judicially modified the Americans with Disabilities Act in a way that ignores the law that Congress enacted and the President signed into law 32 years ago. In 1990, along with the ADA's new protections, Congress decided that those protections would not apply to "gender identity disorders." That phrase, in 1990, was well understood to include stress and discomfort from identifying with a gender other than the one assigned at birth. Thus, one would expect a claim for violating the ADA based on stress and discomfort from identifying with a gender other than the one assigned at birth to fail without much discussion. Such a decision would not mean the stress and discomfort are not real. It would instead mean that Congress excluded such claims from the ADA. And whether we like that policy choice or not, Congress's policy judgment, not ours, should be the law.

But not in our Circuit. In our Circuit, and our Circuit alone, the fact that the meaning of gender identity disorders in 1990 included the stress and discomfort from identifying with a gender other than the one assigned at birth, and that Congress has not amended or removed the exclusion, does not matter. More important in our Circuit is the view of the American Psychiatric Association from twenty years later. By 2012, that private association believed that the phrase "gender identity disorders" carried a stigma. To eliminate that stigma, that organization decided to eliminate the phrase gender identity

7

disorders and use gender dysphoria instead.* Based on that linguistic drift, this Circuit has decided that the same stress and discomfort from identifying with a gender other than the one assigned at birth that was excluded from the ADA as a "gender identity disorder" is no longer excluded because an organization now calls it "gender dysphoria." So much for looking to the meaning of a statute at the time it was written. *See, e.g. Niz-Chaves v. Garland*, 141 S.Ct. 1474, 1480 (2021).

Perhaps as remarkable as our decision itself is the fact that we decide today that the issues presented in it do not even warrant en banc review. We will sit en banc to review fact-based decisions of district courts and immigration judges, but a novel and far-reaching interpretation of an influential federal statute that subjects any employer covered by the ADA to a new disability somehow lacks "exceptional importance" under our Rule 35.

Let me be clear. All individuals, including those with gender dysphoria, deserve to be treated with dignity, respect and kindness. And there may be a legitimate debate about the wisdom of the ADA's exclusion as well as other related policy matters. As I said in my panel dissent, those issues are, or at least should be, outside of our job descriptions as judges. My position is about what the ADA says—not what it should say or should not say.

I dissent from our denial of rehearing en banc.

---

* The American Psychiatric Association stated that "[i]t replace[d] the diagnostic name 'gender identity disorder' with 'gender dysphoria'" with the "aim[] to avoid stigma" from characterizing the condition as a disorder. Gender Dysphoria, Am. Psychiatric Ass'n (2013), https://www.psychiatry.org/File%20Library/Psychiatrists/Practice/DSM/APA_DSM-5-Gender-Dysphoria.pdf.